Mary COOK, Plaintiff–Appellant,

v.

ARROWSMITH SHELBURNE, INC.,
KDT Industries, Inc., and Clifton
Lind, Defendants–Appellees.

No. 94–7445.

United States Court of Appeals,
Second Circuit.

Submitted June 15, 1995.

Decided Nov. 8, 1995.

Andrew Jackson, Middlebury, VT, for Plaintiff–Appellant.

Alison J. Bell, Burlington, VT, (Langrock Sperry & Wool, Burlington, VT), for Defendants–Appellees.

Before: WINTER, JACOBS, and CABRANES, Circuit Judges.

WINTER, Circuit Judge:

Mary Cook appeals from Judge Billings's grant of summary judgment and dismissal of her amended complaint. The amended complaint alleged that the various appellees fired her because of her gender in violation of the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 *et seq.* ("VFEPA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* It also alleged state common law claims of wrongful discharge and intentional infliction of emotional distress. Because Cook has established a prima facie case of gender discrimination, we reverse the grant of summary judgment as to the Title VII and VFEPA claims. We also reverse the grant of summary judgment for the parent corporation concerning its liability for the discriminatory acts of its wholly-owned subsidiary. With respect to the state common law claims, the district court's grant of summary judgment is affirmed. We affirm the dismissal of the claims against Cook's supervisor.

## BACKGROUND

On an appeal from a grant of summary judgment we view the facts in the light most favorable to the non-moving party, in this case Cook. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Henry v. Daytop Village, Inc.,* 42 F.3d 89, 92 (2d Cir.1994).

Based on the record before us, a trier of fact might find the following. Cook worked for defense contractor Arrowsmith Shelburne, Inc. ("ASI"), a wholly-owned subsidiary of KDT Industries, Inc. From 1987 to 1992, she was a Senior Buyer and Materials Manager responsible for, *inter alia,* negotiating procurement contracts to build technical military equipment. Cook was highly regarded by her supervisors, Ned Arcouette and Robert Martin, and the ASI controller, Michael Morgan, and received outstanding performance evaluations throughout her employment with ASI.

In 1991, appellee Clifton Lind assumed the title of General Manager of ASI. Lind was, however, on KDT's payroll. Lind did little to conceal his negative view of women. There is evidence that he referred to females in vulgar terms and stated that they were "basically ... on the earth for fucking purposes only." These remarks at times focused on women in the workplace. Arcouette stated in an affidavit that Lind made hostile remarks not only about female workers in general but also specifically about the abilities of ASI's female employees, referring to them as "a bunch of dumb cunts." Lind also described one female employee as "another woman who ha[s] risen to the level of incompetence, how does shit like this happen," and another as "an overpaid sour pussed bitch."

Arcouette often heard Lind say that he particularly disliked Mary Cook. Arcouette did not understand Lind's attitude because Lind had little opportunity to observe Cook during the work day and "basically had no contact with her work product." Arcouette, who directly supervised Cook's work, considered her to be an outstanding employee. When Lind saw the outstanding performance evaluation given Cook by Arcouette, he asked Arcouette to downgrade the evaluation and said, "how am I ever going to get rid of her if you keep giving her performance appraisals like this"? Arcouette refused to alter the evaluation but told Lind that, as his superior, Lind was free to change the evaluation if he so desired. Lind unsuccessfully asked Martin to persuade Arcouette to alter his performance review of Cook.

On another occasion, Lind asked Morgan to prepare a list of employees who could be terminated as part of a reduction in force. Upon receiving a list that did not include Cook, Lind asked Morgan to put Cook's name on the list. Morgan replied that he did not believe Cook should be laid off and would not alter the list.

On May 21, 1992, while Arcouette was away on business, Lind ordered Martin to fire Cook. Cook stated in a deposition that when she asked Martin and Arcouette why she had been dismissed, she was told that "Clifton [Lind] did not have any respect for women in positions of authority; and that he wanted a man in that job." [1]

Subsequently, Lind asked Arcouette to assume Cook's duties so as to create an upgraded buyer's position. Arcouette's affidavit states that Lind made this request specifically to help Lind "get his ass out of hot water." In Arcouette's view, this was an attempt by Lind to create the appearance of a legitimate corporate restructuring, in light of the controversy within the company over Cook's discharge. Arcouette refused the upgraded position and informed his superiors that he did not wish to be associated with a company that treated its employees in such a fashion.

Arcouette's and Morgan's affidavits both state that Cook's layoff violated ASI's policy regarding the selection of persons to be laid off pursuant to a reduction in force. That policy entailed a three-pronged inquiry: (i) whether some other employee can perform the same job; (ii) whether the job can be combined with another position; and (iii) if two or more individuals could do the job, how they have performed in the past. In Arcouette's and Morgan's opinion, Cook was the only employee who could do her particular job; the job was a full-time position; and Cook was performing in an exemplary fashion. Morgan further stated that, after Cook was let go, ASI had to advertise to hire a replacement for her, a male who had to be paid approximately 33 percent more than Cook.

On December 17, 1992, Cook filed the present action against ASI, KDT, and Lind. Her original complaint alleged a violation of the Consolidated Omnibus Budget Reconciliation Act, known as COBRA, 29 U.S.C. §§ 1161–69; gender discrimination in violation of the VFEPA; wrongful discharge; and intentional infliction of emotional distress. On appellees' motion for summary judgment, the district court held that: (i) the allegations regarding COBRA did not state a claim for relief, (ii) KDT Industries could not be held liable as ASI's parent corporation for the actions of ASI, (iii) Lind could not be held personally liable for any employment-based claims, (iv) Cook failed to show a "causal connection" between her discharge and her gender, and (v) defendants were entitled to judgment as matter of law on the state common law claims. Summary judgment was entered dismissing all claims.

Cook appealed but abandoned the COBRA claim. On October 24, 1994, we entered a summary order holding that, because of the abandonment of the COBRA claim, Cook's complaint no longer adequately alleged either federal question or diversity jurisdiction. However, subsequent to the docketing of the appeal, Cook had fulfilled the administrative requirements for bringing an action under Title VII, and we remanded the case with instructions to allow Cook to amend her complaint to add a Title VII claim and for the court to conduct appropriate further proceedings. We directed that jurisdiction would be

---

1. Arcouette's affidavit does not recount this conversation, and there is no affidavit in the record from Martin. However, Cook's testimony as to what was said is admissible under Fed.R.Evid. 801(d)(2)(D) as a statement by an employee "concerning a matter within the scope of ... employment." *See also Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537–38 (2d Cir.1992). Martin was instructed to lay Cook off, and his hearsay statements concerning that event are thus admissible. Arcouette was Cook's supervisor who reported to Lind concerning her performance and status at ASI. His hearsay statements are also thus admissible. If Martin and Arcouette's statements are viewed as themselves an account of what Lind said to them— double hearsay—they are still admissible because such statements by Lind also concern a matter within the scope of his employment. *See* Fed. R.Evid. 805 (hearsay within hearsay admissible if each part falls within an exception).

restored to this panel upon any further appeal based on the amended complaint.

On remand the case was referred to Magistrate Judge Niedermeier. The magistrate judge recommended that Judge Billings grant defendants' motion for summary judgment on the Title VII claim on the ground that the standards of proof under Title VII and VFEPA are identical and, thus, Judge Billings's earlier determination under Vermont law was dispositive. The district court adopted the magistrate judge's report and recommendation, thereby granting summary judgment to appellees on the Title VII claim. Cook appealed, jurisdiction was thus restored to this panel, and the new appeal was submitted with letter briefs. We now reach the merits.

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo. Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993).

### A. *Gender Discrimination Claims*

The VFEPA is patterned on Title VII, and the standards and burdens of proof under state law are identical to those under federal law. *See Sprague v. University of Vermont*, 661 F.Supp. 1132, 1140 (D.Vt.1987); *Cobb v. Dufresne–Henry, Inc.*, 603 F.Supp. 1048, 1053 (D.Vt.1985). Accordingly, we analyze Cook's VFEPA and Title VII claims together.

■ To establish a prima facie case of gender discrimination, a female plaintiff must show that she was qualified for the position, that her employer discharged her, and that the employer sought or hired a male to replace her. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 and n. 13, 93 S.Ct. 1817, 1824 and n. 13, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253–54 and n. 6, 101 S.Ct. 1089, 1094 and n. 6, 67 L.Ed.2d 207 (1981); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir.1994). The district court, which stated only that there was no "causal connection" between Cook's discharge and her gender, appears to have held that Cook failed to

proffer evidence sufficient to meet this burden. We disagree. There is ample evidence that she performed her work in an exemplary fashion, was fired, and was replaced by a male.

■ When a plaintiff's evidentiary proffer meets the *McDonnell Douglas* test for a prima facie case, the burden of production to offer a legitimate non-discriminatory reason for the discharge falls on the employer, while the burden of persuasion on the whole case remains with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Because appellees' arguments are largely attacks on Cook's prima facie case, it is unclear whether a legitimate non-discriminatory reason for the discharge has been proffered. That hardly matters, however, because Cook has offered sufficient direct evidence of gender discrimination to rebut such a proffer for purposes of summary judgment.

Although some of Lind's remarks may, viewed in isolation, be regarded only as vulgar locker-room misogyny, others were clearly work-related. For example, in referring to female office personnel, he stated "these women are a bunch of dumb cunts." One woman was referred to as an "overpaid sourpussed bitch." Lind also referred to a female employee as "another woman who has risen to a level of incompetence." Lind targeted Cook for termination although he had little familiarity with her work. He thus spoke negatively of her and indicated a desire "to get rid of" her. Lind unsuccessfully attempted to have Arcouette lower Cook's high performance evaluations and, again unsuccessfully, attempted to have Morgan add her name to a list of people Morgan recommended for termination. There is also evidence of Lind seeking to cover up his motives. In the aftermath of Cook's termination, Lind contacted Arcouette to request that Arcouette combine his job with Cook's in order to get Lind's "ass out of hot water," in Arcouette's view an attempt to make Cook's termination appear to be part of a legitimate corporate restructuring.

Moreover, there was evidence that Cook's layoff violated ASI's policy regarding reductions in force. Not only was Cook's job not consolidated with another, but ASI had to

advertise for a new buyer. Morgan was told during the interviewing process that the new buyer was to be a replacement for Cook. Ultimately, a man was hired at a considerably higher salary. Finally, Martin, who was told by Lind to inform Cook of her discharge, and Arcouette, her supervisor, told Cook that her discharge was due to Lind's view that a man should have her job. At the summary judgment stage, therefore, this is not a close case.

### B. KDT's Liability

In *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982), *vacated and remanded on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 3566, 77 L.Ed.2d 1406 (1983), we held with regard to Title VII that the term "employer" is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' ... at common law." *Id.* at 1063. However, *Spirt* involved the relationship between an employer and a third-party insurer, not, as here, a relationship between a corporate parent and a corporate subsidiary. *See Spirt*, 691 F.2d at 1063 (applying the test to hold that the defendants—independent companies that managed the retirement benefits programs for the staff and faculty at Long Island University—could be held liable as employers under Title VII for their alleged discrimination in the computation of benefits). Other circuits have applied *Spirt* to the independent contractor context. *See Carparts Distrib. Ctr. v. Automotive Wholesalers Assoc. of New England*, 37 F.3d 12, 17 (1st Cir.1994) (invoking the *Spirt* test to hold that trade association and trust could be held liable as an employer under the Americans with Disabilities Act for alleged discrimination against employees with AIDS-related conditions); *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 424 (7th Cir.1986) (invoking the *Spirt* test in reversing dismissal of independent contractor physician's Title VII claim against hospital that revoked her staff privileges); *see also Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338, 1340–41 (D.C.Cir. 1973) (reversing summary judgment for defendant hospital on claim brought by independent contractor/private nurse for hospital's refusal to refer patients to him on the ground that "[c]ontrol over access to the job market" and "power ... to foreclose ... access by any individual to employment opportunities" are the key criteria in determining potential Title VII liability of employers).

Courts of appeals that have addressed the question of parent-subsidiary liability have adopted a flexible four-part test aimed at determining the degree of interrelationship between the two entities. *See, e.g., Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983). Thus, the Fifth Circuit has held that

[A] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir.1994) (internal quotation marks omitted); *see also Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977) (applying the four-part test to consolidate two separate corporations as the plaintiff's employer under Title VII).

The National Labor Relations Board originally developed this test as a means for ascertaining whether two entities constituted a single employer in the context of labor disputes, and that test was subsequently approved by the Supreme Court in *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam). However, "[c]ourts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983). The Fifth Circuit has held that "this criterion has been further refined to the point that the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* (citations and internal quotations omitted); *see also Frank v. U.S. West, Inc.*, 3

F.3d 1357, 1362 (10th Cir.1993) (whether parent controls labor relations is an important factor in the four-part integrated test); *Frishberg v. Esprit de Corps,* 778 F.Supp. 793, 800 (S.D.N.Y.1991) (single employer doctrine "focuses on the degree of control by the parent or related company over the direct employing company"), *aff'd without opinion,* 969 F.2d 1042 (2d Cir.1992).

Therefore, as the Sixth Circuit has held, the four-factor test may be satisfied "by a showing that there is an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Armbruster,* 711 F.2d at 1338 (citation and internal quotations omitted).

█ We believe that the appropriate test under Title VII for determining when parent companies may be considered employers of a subsidiary's employees is the four-part test adopted by the Fifth, Sixth, and Eighth circuits. We focus our inquiry, as those circuits do, on the second factor, centralized control of labor relations. Applying this test, we conclude that KDT is not entitled to summary judgment because all four factors weigh powerfully in favor of allowing the action against KDT to continue. ASI is a wholly owned subsidiary of KDT. In addition, there is substantial evidence of an interrelation of operations between KDT and ASI. KDT ran ASI in a direct, hands-on fashion, establishing the operating practices and management practices of ASI. Moreover, KDT clearly maintained control of labor relations at ASI. For example, applications for employment with ASI went through KDT; all personnel status reports were approved by KDT; and ASI cleared all major employment decisions with KDT. Indeed, Mary Cook was herself hired as an ASI purchaser by Scott Zinnecker, the vice president of Human Resources at KDT, and was fired at the direction of Lind, who was paid directly by KDT. Finally, KDT and ASI maintained a common management structure. The President of ASI, Gordon Graves, operated out of the Texas office of KDT. There is thus sufficient evidence in the record to preclude summary judgment for KDT.[2]

█ KDT also argues that it is entitled to summary judgment because Cook did not name it in her EEOC complaint. However, because KDT falls within the "identity of interests" exception articulated in *Johnson v. Palma,* 931 F.2d 203 (2d Cir.1991), its omission from Cook's administrative filing does not warrant its dismissal. In *Johnson,* we held that in determining whether the unnamed parties have an identity of interests with the named parties, courts should consider:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence in the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and 4) whether the unnamed party has in some way represented to the complain-

---

**2.** The Title VII and VFEPA actions against Lind must be dismissed in light of our decision in *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir. 1995), which held that supervisory personnel may not be held individually liable under Title VII. *Id.* at 1312–13. The issue of whether such an individual may be made a party defendant solely in the person's corporate capacity as an agent of the employer—not subject to individual liability but a party for the purpose of discovery—as suggested by Judge Mukasey in *Coraggio v. Time Inc. Magazine Co.,* No. 94 Civ. 5429, 1995 WL 242047, at *8 (S.D.N.Y. Apr. 26, 1995), was neither argued to, nor addressed by, the *Tomka* court. We also do not address the issue because it has not been argued in the instant matter.

The VFEPA claim against Lind must be dismissed for the same reasons. *See McHugh v. University of Vermont,* 758 F.Supp. 945, 949 (D.Vt.1991), *aff'd,* 966 F.2d 67 (2d Cir.1992). Indeed, the case for joining Lind is weaker under the VFEPA than under Title VII because the VFEPA does not include in its definition of employer the "and any agent" language that has troubled the federal courts under Title VII. *See Tomka,* 66 F.3d at 1312–17.

ant that its relationship with the complainant is to be through the named party. *Id.* at 209–10 (*quoting Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)). Although the first factor of the *Johnson* test weighs against Cook—it is arguable that she could easily have included KDT in the EEOC charge—factors two and three strongly favor allowing her to name KDT as a party defendant in the instant suit. As we noted above, the interests of KDT and ASI are identical. KDT approves all personnel decisions at ASI, and thus KDT and ASI have identical interests with respect to conciliation and compliance. Moreover, there were no EEOC proceedings in the instant case and KDT could not have been prejudiced in any way.

### C. State Common Law Claims

#### (1) Wrongful Discharge

 Under Vermont law, a claim of wrongful discharge must involve the breach of an express or implied employment contract. *See Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 644 A.2d 316 (1994); *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 652 A.2d 466 (1993). At-will employees are thus barred from bringing wrongful discharge claims. Under *Taylor*, employment contracts for an indefinite period of time are presumed to be at-will. 652 A.2d at 470.

 ASI's written offer of employment to Cook explicitly stated: "Employment with ASI is not for a specific term. You are free to resign at any time, just as the company may terminate you at any time, for any reason not prohibited by law." Additionally, the ASI handbook states that "regular" employees are those who are employed on a continual basis without a designated termination date and that this status "in no way conveys any permanent right to continued employment." Cook signed a statement that she received the ASI handbook. Accordingly, Cook was an at-will employee under Vermont law and may not bring a wrongful discharge claim.

#### (2) Intentional Infliction of Emotional Distress

 A prima facie case of intentional infliction of emotional distress requires a plaintiff to establish "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *McHugh v. University of Vermont*, 758 F.Supp. 945, 949 (D.Vt.1991), *aff'd*, 966 F.2d 67 (2d Cir.1992) (internal quotation marks and citations omitted). The Vermont Supreme Court has held that "mere termination of employment will not support a claim for intentional infliction of emotional distress." *Crump v. P & C Food Mkts.*, 154 Vt. 284, 576 A.2d 441, 448 (1990). "However, if the *manner* of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis plaintiff, it may provide grounds for the tort action." *Id.* (emphasis supplied).

 Cook neither alleges nor argues that her termination was conducted in a fashion so oppressive as to rise to the level of a tort. She does not even describe the actual event or claim that it was accompanied by defamatory statements or threats. *Cf. id.* at 448–49 (affirming jury verdict where employer summoned plaintiff "to a lengthy meeting without notice, continued the meeting without a break for rest or food, repeatedly badgered [the plaintiff] to amend and sign a statement, and ... plaintiff did not feel free to leave the meeting"). As matter of law, therefore, her treatment was not sufficiently outrageous to amount to the intentional infliction of emotional distress.[3]

### CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment on the Title VII and VFEPA claims with regard to ASI and KDT. We affirm the district court's grant of summary judgment on appellant's state common law claims. We

---

**3.** The district court denied a motion to amend the complaint to add a claim of interference with a contractual or business relationship. We see no abuse of discretion in that denial.

affirm the dismissal of the claims against Lind.