Eric R. GREGORY, Plaintiff–Appellant,

v.

Sheila E. WIDNALL, Secretary of the Air Force, Defendant–Appellee.

No. 97–35600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1998.

Decided Sept. 3, 1998.

Robert A. Sparks, Fairbanks, Alaska, Robert John, Law Office of Robert John, Fairbanks, Alaska, for plaintiff-appellant.

James E. Torgerson, Assistant United States Attorney, Anchorage, Alaska, for defendant-appellee.

Before: FARRIS, O'SCANNLAIN and HAWKINS, Circuit Judges.

PER CURIAM:

Eric Gregory, an African–American civilian technician in the Alaska Air National Guard, was awarded $150,000 after prevailing in an EEOC action and subsequent Title VII suit against his employer ("Gregory I"). Judgment was based on a series of discriminatory acts by Colonel Van Williams, the second in command, which culminated in Gregory's termination in 1992. Sergeant Gregory was reinstated to his old position in September 1994, but relations remained tense with some of his supervisors. After a short time back on the job, Gregory brought a series of new EEOC actions, alleging a variety of discriminatory practices by his superiors based on his race, sex, and prior protected actions.

In his second formal EEOC complaint, filed November 1994, Gregory claimed to have been falsely accused by a management-level employee, Senior Master Sergeant Mary Hamby, of losing the promotion package of a senior officer, Major Burton. Hamby was the subject of an outstanding military social actions complaint brought by Gregory. When the Burton promotion package could not be located, she continued to maintain that she left the package on Gregory's desk. Gregory informed her that he kept logs of everything that came in and out of his office; the promotion package was not entered in the logs. Major Burton later returned from a trip off base and it was discovered that Burton himself had taken the package off Gregory's desk. Hamby's supervisor, Lt. Colonel William Hutchinson, verbally counselled her for her mistake. The EEOC hearing officer who investigated the complaint found no evidence of discrimination or reprisal and dismissed the case.

In his third formal EEOC complaint, filed March 1995, Gregory alleged that National Guard Bureau officials and officers at the Alaska Air National Guard withheld a witness statement from the previous EEOC hearing officer, thereby denying Gregory a fair hearing. During Gregory's second formal EEOC claim, his attorney had requested from the National Guard Bureau any additional information from Alaska Air National Guard about Senior Master Sergeant Hamby's response to Gregory's discrimination claim. The National Guard Bureau agreed to release the "official case file" on Gregory. However, the case file contained only cursory remarks by Hamby about the Burton incident. The Air National Guard did not reveal to the Bureau or Gregory that it had obtained a more detailed witness statement from Senior Master Sergeant Hamby. Gregory first became aware of Hamby's statement at the close of the investigation hearing, when the Air National Guard offered it into evidence. Gregory's objection to its admission was sustained. Gregory did not receive a copy. Major Oisted of the Air National Guard testified later that he had tried repeatedly to fax the witness statement to the Bureau and thought the fax had gone through. Gregory's claim with respect to the witness statement incident was undecided as of the time Gregory filed the current lawsuit and was therefore dismissed by the EEOC.

In his fourth formal EEOC complaint, filed in May 1995, Gregory brought extensive allegations of reprisal and discrimination. He complained that a similarly-situated white colleague, Brian McCarthy, received preferential treatment. At about the time Gregory became eligible for promotion, Major Shumaker, his supervisor, implemented a new policy in which she said she would evaluate candidates for at least six months before recommending their promotion. Gregory claims that his promotion to master sergeant was improperly delayed eight months as a result of the new policy. Moreover, Shumaker recommended McCarthy for promotion after only five months of evaluation and ended the policy so that McCarthy's promotion could be effected.

Gregory further alleged that Major Shumaker gave him the customer service responsibilities of a retiring superior, Major Trout, without granting him any increase in authority. He was given additional responsibilities for the customer service section, yet Major Shumaker maintained that, because Gregory did not have an "s" next to his name on the Unit Manning Document, he could not supervise other personnel. Within a few days of complaining, Gregory was relieved of his new responsibilities.

Gregory also accused his superiors of selectively using the sick leave policy to overload him with other people's work. When Gregory attempted to fulfill his additional responsibilities in the customer service section, he discovered that full-time military members in the Air National Guard were being allowed to call in sick without reporting to sick call, in violation of Major Shumaker's stated policy. The absences of full-time military members forced Gregory to perform more than one job at a time.

Gregory also alleged that his supervisors withheld positive performance evaluations during the second EEOC action; that he was threatened with receiving a poor performance rating, even though he was actually given a rating of "outstanding"; and that the Air National Guard took insufficient remedial actions in response to his pre-September 1994 complaints. Gregory's fourth EEOC action was pending as of the time he filed the current lawsuit; therefore, it was dismissed.

Gregory consolidated his last three EEOC complaints in federal district court, alleging unlawful racial and sex discrimination, a hostile work environment based on racial, sexual and retaliatory animus, and intentional infliction of emotional distress. In support of his hostile work environment claim, he pointed to an incident in which a monkey was drawn on an interoffice memo, and to the fact that most of his supervisors are female. He also included extensive evidence of a hostile discriminatory environment in the period up to September 1994, when the stipulated judgment was reached in *Gregory I*.

Summary judgment was granted for defendants. Gregory appeals only the dismissal of his hostile work environment claims. We affirm.

## DISCUSSION

Defendants raised preliminary legal matters. We address those matters first.

■ The district court agreed with defendants that res judicata applies to Gregory's claims regarding incidents prior to September 6, 1994, the date judgment was entered in *Gregory I*. We review *de novo* the trial court's determination that res judicata applies. *See In re Russell,* 76 F.3d 242, 244 (9th Cir.1996).

■ In his first Title VII action, Gregory claimed that he was subject to discrimination on the basis of his race and sex, and in retaliation for making complaints. He pointed to precisely the same incidents from 1992–1994 as he now cites in support of his hostile work environment claim. "[R]es judicata (or claim preclusion) bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action." *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir., 1982)(internal quotations omitted). We are therefore estopped from considering evidence of incidents before September 6, 1994 to prove that Gregory was subject to a hostile work environment.

■ Defendants next argue that national guard civilian technicians are intrinsically military, and that all of Gregory's claims are nonjusticiable under the *Feres*[1] doctrine. Alternatively, they argue that the district court did not err when it excluded evidence of the incident surrounding the promotion of Technical Sergeant Brian McCarthy, who is white. We review *de novo* the question of whether the *Feres* doctrine is applicable to certain or all facts in the record. *Jackson v. United States,* 110 F.3d 1484, 1486 (9th Cir. 1997).

Guard technicians are in a hybrid position which combines both military and civilian aspects. During the week, guard technicians are like other federal service employees, in that they have access to the EEOC grievance system. However, their positions are dependant on maintaining commensurate positions in the reserve forces. They wear uniforms, address each other by military rank, and perform military training one weekend a month and fifteen days a year. On the other hand, they are under the general schedule of pay rather than under military rank allotments and entitlements.

■ "Title VII applies to Guard technicians except when they challenge personnel actions integrally related to the military's unique structure." *Mier v. Owens,* 57 F.3d 747, 748 (9th Cir.1995). We reject defendants' argument that Gregory's claims are nonjusticiable as a matter of law. However, decisions relating to the "promotion [or] suspension" of civilian employees of the National Guard, including technicians, are "integrally related to the military's unique structure". *See Mier,* 57 F.3d at 751. Gregory's claims relating to McCarthy's promotion are unquestionably related to promotion and are therefore nonjusticiable under Title VII.[2]

■ Gregory has brought a hostile work environment claim based on racial, sexual, and retaliatory animus. We review *de novo* the district court's grant of summary judgment to the defendants. *See Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996).

■ To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir. 1995). The more outrageous the conduct, the less frequent must it occur to make a workplace hostile. *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir.1991).

■ A single drawing of a monkey on a memo circulated to senior NCOs, accompanied by the verbal explanation that it was

---

**1.** *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

**2.** We assume, without deciding, that the district court did not err when it held that the rest of the alleged incidents may support justiciable claims. Admission of these incidents does not save Gregory's case.

intended to remind officers not to "get the monkey off their back" by passing their responsibilities to others, is not sufficient to raise a jury question. Nor is the mere fact that plaintiff is male and most of his supervisors are female.

Assuming, but not deciding, that we would recognize Gregory's retaliation-based hostile work environment claim, we apply the same elements used by the district court, which include among other things conduct reflecting a retaliatory animus. We decline to decide at this juncture whether the recent decision in *Burlington Indust., Inc. v. Ellerth,* — U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) applies to retaliation-based hostile environment claims.

 Gregory has failed to raise a genuine issue of material fact. None of the incidents described by Gregory in his second, third, or fourth EEOC complaint shows retaliatory animus.

Second EEOC Complaint: The evidence is uncontested that Sergeant Hamby apologized to Gregory for accusing him of losing the package, that Gregory received his promotion, and that supervisors held Hamby, not Gregory, responsible for the loss of the package.

Third EEOC Complaint: Major Oisted, who was responsible for faxing the witness statement to the National Guard Bureau, testified that he attempted to do so and thought the fax went through. Moreover, Sergeant Hamby's witness statement was hardly a smoking gun. If anything, it inculpated Gregory, not Hamby. It reads in relevant part:

> [W]e then went over to DPMQ and dropped off the package on Sgt. Gregory's desk. This was standard procedure.....
>
> Two weeks prior to the [promotion] I called DPMQ to ensure the package was indeed ready to meet the board. I spoke to TSgt Eric Gregory he [sic] said the package was not in his possession. I asked him to check around because I was sure the package must be over there. He called back and said he could not find it. I told him I had checked it already. I told him I could not check with Maj. Burton since he was out of town. I asked TSgt Gregory to check w/ Maj. Shumaker [sic]

to make sure it wasn't there. He said he had and it wasn't there. I told him I would continue looking and asked him to do the same.

> Maj. Burton returned to Fairbanks on Friday 16 Sept. 1994 and I called him and told him about the problem. He said that he had gone over and talked to TSgt. Gregory and told him that he would hold on to the package until he returned from this trip and that he had told Sgt. Gregory that he wanted to ensure the package's safety.... He said he had an agreement with Sgt. Gregory to do it this way.

Fourth EEOC Complaint: The evidence submitted in support of the fourth complaint does not raise a material issue of fact. First, it is uncontested that Major Trout, who was responsible for evaluating Gregory while his second complaint was pending, failed to evaluate *any* of her subordinates in a timely manner. Second, it is uncontested that Gregory's final rating for the period was "outstanding" and that he received a $799 performance bonus. Third, when Gregory complained that he was given additional responsibilities in the personnel department without concomitant authority, he was promptly relieved of those responsibilities. The fact that when fellow employees called in sick Gregory's work responsibilities increased does not, without more, show retaliation. Finally, the record reflects that defendants took extensive remedial actions following the judgment in *Gregory I.* For example, they posted notices around the base that Gregory had been racially discriminated against and that further discrimination would not be tolerated. They also required all accused parties to engage in at least forty hours each of EEOC counselling, which was carried out.

Gregory has failed to raise a genuine issue of material fact with respect to any of his surviving claims.

AFFIRMED.