**Soo Cheol KANG, Plaintiff–Appellant,**

v.

**U. LIM AMERICA, INC., Tae Jin Yoon, Does 1–100, Defendant–Appellee.**

No. 00–55583.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Filed July 15, 2002.

Richard E. Grey, Law Office of Richard E. Grey, San Diego, CA, for the plaintiff-appellant.

John S. Battenfeld and Melissa M. Mulkey, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for the defendants-appellees.

Before: BROWNING, FERNANDEZ, and FISHER, Circuit Judges.

Opinion by Judge JAMES R. BROWNING; Dissent by Judge FERNANDEZ.

JAMES R. BROWNING, Circuit Judge.

Soo Cheol Kang (Kang) appeals summary judgment in favor of his employer on Title VII and state law tort claims. We reverse and remand for further proceedings.

## I Background

Kang is a United States citizen of Korean national origin. In April 1994, he began working for a California corporation called U. Lim America, Inc. All of U. Lim America's employees shared Korean heritage. Tae Jin Yoon (Yoon) was Kang's supervisor. Yoon subjected Kang and other Korean workers to verbal and physical abuse and discriminatorily long work hours. The verbal abuse consisted of Yoon screaming at Kang for up to three hours a day and calling him "stupid," "cripple," "jerk," "son of a bitch," and "asshole." The physical abuse consisted of striking Kang in the head with a metal ruler on approximately 20 occasions, kicking him in the shins, pulling his ears, throwing metal ashtrays, calculators, water bottles, and files at him, and forcing him to do "jumping jacks."[1] Kang began to cut back on the required overtime in order to spend time with his pregnant wife; Yoon fired him.[2]

U. Lim America had six or fewer employees. However, the U.S.-based company owned and operated U. Lim de Mexico, an electronics manufacturing company in Tijuana, Mexico. All of U. Lim America's employees worked at the Tijuana factory. U. Lim de Mexico employed between 50–150 workers—all citizens of Mexico.[3]

U. Lim de Mexico was organized under the laws of Mexico and existed for the sole purpose of assembling parts for televisions and computer monitors for sale to U. Lim America at cost plus a one percent surcharge. U. Lim America was U. Lim de Mexico's only customer. Yoon was the Vice–President of U. Lim America and the President of U. Lim de Mexico. His father, Ki Hwa Yoon, owned both U. Lim America and U. Lim de Mexico. He was Chief Executive Officer of both companies and President of U. Lim America.

## II Proceedings Below

Kang filed suit in California state court against U. Lim America and Yoon for national origin discrimination and harassment in violation of Title VII and the California Fair Employment and Housing Act. Kang also brought state law claims for wrongful termination in violation of public policy and breach of contract. Defendants removed the case to the United States District Court for the Southern District of California. The district court granted summary judgment to U. Lim America and Yoon on all Kang's causes of action.

Kang's appeal focused on four issues: (1) the applicability of Title VII, (2) national origin harassment, (3) national origin discrimination, and (4) equitable tolling.

We consider the district court's summary judgment decision de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

## III Application of Title VII

At the threshold, we must determine whether Title VII applies to U. Lim Amer-

---

1. Yoon also abused Kang's co-workers Soon Wan Park (Park) and Jae Ho Cho (Cho). Yoon called Park names such as "son of a bitch" and "son of a vagina" (apparently an offensive epithet in the Korean language), and subjected Park to physical abuse, punching him in the nose, striking him in the face with metal rulers, throwing a crystal ashtray at him, pulling his ears, and kicking him. Yoon also yelled at Cho and threw things at him.

2. There is some dispute as to whether Yoon fired Kang or Kang quit. For purposes of summary judgment, U. Lim America conceded that Yoon fired Kang.

3. Only one of U. Lim de Mexico's workers was of Korean descent.

ica. U. Lim America argued it was not covered by Title VII because it employed fewer than fifteen people.[4] We hold that Title VII applies because U. Lim America and U. Lim de Mexico were an integrated enterprise which employed a combined total of more than fifteen employees.

■ This circuit applies a four-part test to determine whether two entities are an integrated enterprise for purposes of Title VII coverage. *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir.1983). The four factors are: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Id.*[5] Considering these factors we conclude that U. Lim de Mexico and U. Lim America were an integrated enterprise employing more than the necessary fifteen employees.

### 1. Interrelation of Operations

■ The first factor, interrelation of operations, weighs in favor of finding the two companies to be an integrated enterprise. U. Lim America and U. Lim de Mexico shared a facility in Mexico; neither had a facility in the United States. All of U. Lim America's employees worked in the Tijuana factory, commuting across the border each day. U. Lim America kept U. Lim de Mexico's accounts, issued its paychecks and paid its bills. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443 (4th Cir.1999) (examining such factors as whether the companies operated at separate locations, filed separate tax returns, held separate director and shareholder meetings, conducted separate banking,

purchased goods separately, entered into lease agreements separately, and were separately managed).

### 2. Common Management

■ The second factor, common management, also favors finding the two companies to be integrated for Title VII purposes. Yoon was the Vice–President of U. Lim America and President of U. Lim de Mexico. U. Lim de Mexico supervisors reported directly to U. Lim America's managers. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) (finding common management where the two companies had a "common management structure" and the President of the subsidiary operated out of the parent's office).

### 3. Centralized Control of Labor Relations

■ The third factor, centralized control of labor relations, is the "most critical." *Hukill*, 192 F.3d at 442; *Cook*, 69 F.3d at 1240; *see also Childs*, 719 F.2d at 1382 (holding that since the local branch of the union conducted its own labor relations the two entities were not an integrated enterprise). This factor too favors finding the two companies to be an integrated enterprise.

U. Lim America had the authority to hire and fire U. Lim de Mexico employees. The Mexican supervisors reported to U. Lim America management. U. Lim America had essentially complete control over U. Lim de Mexico's labor relations.

4. Title VII applies to an employer, "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

5. Title VII uses these same factors to determine whether a foreign corporation is controlled by a U.S. corporation and therefore the foreign corporation is subject to Title VII. 42 U.S.C. § 2000e–1(c).

### 4. Common Ownership or Financial Control

■ The fourth factor also weighs in favor of finding the two companies to be an integrated enterprise. U. Lim America and U. Lim de Mexico were owned and controlled by the same person, Yoon's father Ki Hwa Yoon. Furthermore, U. Lim de Mexico essentially made no profit and transferred all its funds to U. Lim America. *See Cook*, 69 F.3d at 1241(finding the common ownership requirement met where one company was a wholly owned subsidiary of the other).

■ U. Lim America argued that the definition of employee in Title VII prohibits counting foreign employees of U.S. controlled corporations for purposes of Title VII coverage. The statutory definition is inclusive rather than restrictive. The term "employee" is defined to *include* U.S. citizens employed by U.S. companies in foreign countries rather than to prohibit counting non-U.S. citizens. *See* 42 U.S.C. § 2000e(f). The definition arose out of Congress's amendments to Title VII in the 1991 Civil Rights Act to legislatively overturn the result in *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 259, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (holding that U.S. citizens working for U.S. companies abroad were not covered by Title VII).

*Morelli v. Cedel*, 141 F.3d 39, 42 (2d Cir.1998), interpreted similar definitional language in a related statute, the Age Discrimination in Employment Act (ADEA). The *Morelli* court explained that Congress amended the ADEA to specify that the term employee included U.S. citizens working for U.S. companies outside the U.S., not to exclude counting foreign employees. *Id.* at 42–44.

■ The purpose of the Civil Rights Act of 1991, which amended the definition of employee, was to restore civil rights protections that had been limited by the Supreme Court and to strengthen the protection and remedies of Federal civil rights laws. H. Rep. No. 102–40(I), at 4 (1991), U.S. Code Cong. & Admin. News 549, 549. Since we broadly interpret ambiguous language in civil rights statutes to effectuate the remedial purpose of the legislation, *see Griffin v. Breckenridge*, 403 U.S. 88, 97, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also* H. Rep. No. 102–40(I), at 88, U.S. Code Cong. & Admin. News at 626 (stating that "remedial statutes, such as civil rights law[s], are to be broadly construed"), we hold that Title VII's definition of "employee" does not prohibit counting the foreign employees of U.S.-controlled corporations for determining coverage.

■ The fact that some of the employees of the integrated enterprise are not themselves covered by federal antidiscrimination law does not preclude counting them as employees for the purposes of determining Title VII coverage. *See Morelli*, 141 F.3d at 44–45. "The nose count of employees relates to the scale of the employer rather than to the extent of protection." *Id.* at 45. The *Morelli* court so concluded due, in part, to the policies behind limiting Title VII coverage to employers with fifteen or more workers including "the burdens of compliance and potential litigation costs, 'the protection of intimate and personal relations existing in small businesses, potential effects on competition and the economy, and the constitutionality of Title VII under the Commerce Clause.'" *Id.* at 45 (citation omitted). U. Lim America combined with its large Mexican operation is not a small business of the type Congress intended to protect with the minimum employee limitation.[6]

---

**6.** U. Lim America argued that if the court  found U. Lim America and U. Lim de Mexico

## IV National Origin Harassment

We reverse summary judgment for the employer on Kang's harassment claim.

■ To prevail on his harassment claim, Kang must show: (1) that he was subjected to verbal or physical conduct because of his national origin; (2) "that the conduct was unwelcome"; and (3) "that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *See Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir.1998). Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace. Here, however, Kang alleged that he and other Korean workers were subjected to physical and verbal abuse because their supervisor viewed their national origin as superior. The form is unusual, but such stereotyping is an evil at which the statute is aimed. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874–75 (9th Cir.2001) (holding that a plaintiff proved harassment "because of sex" where he was harassed because he failed to conform to male stereotypes).

■ Kang presented evidence that Yoon abused him because of Yoon's stereotypical notions that Korean workers were better than the rest and Kang's failure to live up to Yoon's expectations. On numerous occasions, Yoon told Kang that he had to work harder because he was Korean; he contrasted Koreans with Mexicans and Americans who he said were not hard workers; and although U. Lim de Mexico employed 50–150 Mexican workers, Yoon did not subject any of them to physical abuse. This evidence created a genuine issue of material fact as to whether Yoon's abuse and imposition of longer working hours was based on Kang's national origin.

Kang also presented evidence that the physical and verbal abuse and long working hours were in fact unwelcome. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (discussing the requirement that the victim perceive the environment as offensive).

■ Kang's evidence further showed that the verbal and physical abuse and discriminatory working hours created a work environment that was "objectively offensive ... one that a reasonable person would find hostile or abusive." *Id.* "The more outrageous the conduct, the less frequent (sic) must it occur to make a workplace hostile." *Gregory*, 153 F.3d at 1074. After considering all the circumstances including the frequency and severity of the conduct, the fact that the abuse was frequently "physically threatening or humiliating" and that it unreasonably interfered with Kang's work performance, we conclude that Kang presented evidence sufficient to survive summary judgment that Yoon subjected Kang to an objectively hostile environment. *Nichols*, 256 F.3d at 872 (citation omitted).

U. Lim America argued that Kang's claim of hostile work environment based on national origin, was grounded on time-barred conduct because much of the conduct complained of occurred more than 300

to be an integrated enterprise, Kang's claim still failed because he did not name U. Lim de Mexico as a defendant in this lawsuit. However, Kang does not seek to impose liability on U. Lim de Mexico. U. Lim de Mexico's connection to U. Lim America is as a labor pool and production facility. Its role in this lawsuit is solely to demonstrate the scale of U. Lim America's operations. Because U. Lim de Mexico and U. Lim America's managing officers are the same, for all practical purposes, U. Lim de Mexico has been involved in this suit from the beginning.

days before Kang filed a complaint with the Equal Employment Opportunity Commission (EEOC).[7] Kang filed his EEOC complaint on November 13, 1998. 300 days prior to that date was January 17, 1998. Kang was terminated on February 2, 1998. Thus, only incidents occurring during the last two and a half weeks of Kang's employment could form the basis of a hostile work environment claim unless Kang demonstrated that the conduct constituted a continuing violation. *See Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1475 (9th Cir.1989).

█ When "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 2067, 153 L.Ed.2d 106 (2002). To survive summary judgment, therefore, Kang was required to demonstrate only that genuine issues of material fact exist as to whether the acts about which he complained were "part of the same actionable hostile work environment practice, and if so, whether any act [fell] within the statutory time period." *See id.* at 2067.

█ Kang alleged that Yoon's acts established a continuing violation because they were part of a "pattern of discriminatory treatment." Kang did not recall specific acts of verbal or physical harassment during his last two and a half weeks of work, although the evidence reflected such acts prior to that time. However, Kang alleged that the discriminatorily long working hours were required until his ter-

mination and that his termination itself, arguably the culmination of the harassment, fell within the defined period. Because this case comes to us at summary judgment, we draw all inferences in the light most favorable to Kang. We conclude that Kang raised genuine issues of material fact as to whether a continuing violation occurred and if so, whether any act fell within the statutory period.

## V Disparate Treatment

█ We also reverse summary judgment for the employer on Kang's disparate treatment claim. To make out a prima facie case of disparate treatment, Kang must show that: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. *Chuang v. Univ. of California Davis,* 225 F.3d 1115, 1123 (9th Cir.2000); *see also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994) (holding that the amount of proof needed to establish a prima facie case on summary judgment "is minimal and does not even need to rise to the level of preponderance of the evidence").

█ Kang established membership in a protected class—people of Korean national origin. Although the parties dispute whether Kang was qualified for the position when he was terminated since he was unwilling to work as much overtime as Yoon wanted, Kang raised a genuine issue of material fact as to whether he would have been required to work as much overtime if he had not been Korean. Yoon

---

7. Title VII requires a complainant to file his charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). However, if the complainant initially files proceedings with a state agency, as Kang did here, the time limit for EEOC filing is extended to 300 days. *Id.; see also Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1473 (9th Cir. 1989).

allegedly subjected Kang to a number of adverse employment conditions, including severe verbal and physical abuse, discriminatory overtime, and termination, that constituted "a material change in the terms and conditions" of Kang's employment. *See Chuang,* 225 F.3d at 1126 (finding an involuntary relocation of plaintiffs' laboratory space to be an adverse action). Finally, Kang raised genuine issues of material fact as to whether similarly situated non-Korean employees were treated more favorably.

■ Although U. Lim America presented legitimate nondiscriminatory reasons for its conduct, *see Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256–57, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), Kang has set forth sufficient facts from which a jury could find that U. Lim's reasons are pretextual. Kang presented direct evidence that Yoon abused him and required Koreans to work longer hours because Yoon believed that Korean workers were superior to Mexicans and Americans. Specifically, Yoon allegedly said that American workers were lazy and that he took pity on them; that Mexicans were lazy and that they would rather spend money than work; and that "Koreans must work hard because Mexicans [are] unreliable and you have to watch out for them." This evidence is sufficient for a jury to conclude that Kang was subjected to adverse employment conditions, and ultimately fired, based on his failure to conform to ethnic stereotypes. *See, e.g., Lindahl v. Air France,* 930 F.2d 1434, 1439 (9th Cir.1991) (holding that it was impermissible to base hiring decisions on stereotypes about a protected class).

Since Kang must present "very little" direct evidence of discrimination to show pretext, summary judgment should not have been granted for the employer. *God-*win *v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998).

## VI Equitable Tolling of the State Law Claim

■ We also reverse summary judgment for the employer on Kang's state tort law claim. Kang argued that his claim for wrongful termination in violation of public policy was timely filed. The governing statute of limitations is one year. *Funk v. Sperry Corp.,* 842 F.2d 1129, 1133 (9th Cir.1988). Kang was terminated from his employment on February 2, 1998. He filed his complaint on February 16, 1999— 14 days late. However, he filed charges with the EEOC and the California Department of Fair Employment and Housing (DFEH) complaining of the same conduct.

■ Under California law, the statute of limitations on Kang's tort claim may be equitable tolled while he pursued his administrative remedies. Equitable tolling applies if: (1) the defendants had timely notice of plaintiff's first claim; (2) the defendants were not prejudiced in gathering evidence to defend against the second claim and (3) the plaintiff acted in good faith and engaged in reasonable conduct in filing the second claim. *Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir. 1993).

■ The record indicates that: (1) defendants had timely notice of Kang's first claim which was filed within the one year statute of limitations; (2) defendants were not prejudiced by Kang's late filing of his wrongful termination claim because their investigation of Kang's EEOC and DFEH charges would have allowed them to gather evidence to defend against the wrongful termination claim grounded on the same conduct, *see Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1138 (9th Cir.2001); and (3) the time between Kang's receipt of a right-to-sue letter and

the filing of his complaint was not unreasonable. Because there are genuine issues of disputed fact as to whether Kang's complaint was timely filed, summary judgment was inappropriate.[8]

## VII Conclusion

Kang presented evidence sufficient to invoke equitable tolling and raise genuine issues of material fact as to the merits of his federal harassment and discrimination claims.

**REVERSED and REMANDED.**

FERNANDEZ, Circuit Judge, Dissenting:

I dissent because Title VII does not apply to this case at all and Kang did not file his California wrongful termination claim on time.

### A. *Title VII*

In order for an employer to be covered by Title VII, it must have at least 15 employees during at least a portion of the year. *See* 42 U.S.C. § 2000e(b). U. Lim America never had more than 5 employees. Thus, on its face, Title VII does not even apply to U. Lim America.

Kang recognizes as much, but he argues that the employees of U. Lim de Mexico should be swept into the count, and it would then be far over the 15 employee requirement. It is true that there are times when the employees of two separate entities can be treated as if they belonged to one entity for Title VII purposes. *See, e.g., Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995); *Childs v. Local 18, Int'l Bhd. of Elec. Workers,* 719 F.2d 1379, 1382 (9th Cir.1983); *Armbruster v. Quinn,* 711 F.2d 1332, 1337–39 (6th Cir.1983); *cf. Pearson v. Component Tech. Corp.,* 247 F.3d 471, 486 (3d Cir.) (Worker Adjustment and Retraining Notification Act), *cert. denied,* —— U.S. ——, 122 S.Ct. 345, 151 L.Ed.2d 261 (2001); *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 442 (4th Cir.1999) (Family and Medical Leave Act). But, we need not consider whether the structure of the various U. Lim enterprises would allow us to combine the employees of U. Lim America with those of U. Lim de Mexico for Title VII purposes[1] because it would not advance Kang's claim, if they were combined.

The plain language of 42 U.S.C. § 2000e(f) which, while generally unhelpfully defining an employee as "an individual employed by an employer," goes on to state that "[w]ith respect to employment in a foreign country, such term includes an individual who is a citizen of the United States." Thus, it is apparent that "[u]nless an American citizen, a person employed abroad is not an 'employee' under Title VII." *Russell v. Midwest–Werner &*

---

8. Kang asserted that he submitted his complaint to the DFEH on September 23, 1998, the date the charge was signed. Although U. Lim America disputed this date, at summary judgment the court views evidence in the light most favorable to Kang. Therefore, we assume he filed the charge on September 23, 1998. Using that date, the statute of limitations on Kang's wrongful termination claim should be equitably tolled for 34 days because his administrative charges were pending with the DFEH for 27 days and with the EEOC for 7 days.

1. I do note that the test has been used in an attempt to make the "affiliated" corporation liable for the acts of the immediate employer. *See Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1069–70 (10th Cir.1998). Here, Kang does not seek that—U. Lim de Mexico has not even been joined in this action. Kang seeks to make the immediate employer liable and to count the employees of an alleged affiliate for the purposes of meeting the requirements of 42 U.S.C. § 2000e(b) only. There is no need to decide that question. *But see Rogero v. Noone,* 704 F.2d 518, 520–21 (11th Cir.1983).

*Pfleiderer, Inc.,* 955 F.Supp. 114, 115 (D.Kan.1997). In other words, the definition of employee does not automatically include all persons working abroad because, if it did, there would be no reason to expressly include United States citizens. Rather, non-United States citizens, who are working abroad, are not employees within the meaning of Title VII and cannot be counted when we decide if an entity is an employer pursuant to 42 U.S.C. § 2000e(b).

The above reasoning is compatible with and underscored by the reasoning of the Supreme Court on the related question of whether aliens working in the United States are covered by Title VII. The Court pointed out that because 42 U.S.C. § 2000e–1(a) provides that Title VII does not apply " 'with respect to the employment of aliens outside any State,' " it must apply "with respect to the employment of aliens inside any State." *Espinoza v. Farah Mfg. Co. Inc.,* 414 U.S. 86, 95, 94 S.Ct. 334, 340, 38 L.Ed.2d 287 (1973). Similarly, if Congress has declared that employee does include "an individual who is a citizen of the United States," working abroad,[2] it must mean that it does not include "an individual who is [not] a citizen of the United States," working abroad. Each instance is encompassed by the hypostasis of that old rule of construction (rather than of logic): inclusio unius est exclusio alterias.

I recognize that this may conflict with a holding of the Second Circuit under the Age Discrimination in Employment Act. *See Morelli v. Cedel,* 141 F.3d 39 (2d Cir. 1998). In *Morelli,* the court addressed an argument that only the domestic employees of a foreign employer should be counted for ADEA purposes. *Id.* at 44–45. It would seem that the court could have answered that question by pointing to the fact that United States citizens employed abroad are included in the ADEA definition of an employee (just as they are included under Title VII), even if they are not located domestically. 29 U.S.C. § 630(f). The court went further, however, and stated that if Congress intended to "exclude a foreign employer's foreign workers," it could have said so. *Morelli,* 141 F.3d at 44. That seems to turn matters upside down; as I have already indicated, it seems pellucid that Congress included United States citizens working abroad because, otherwise, they would be excluded along with other persons who work abroad. In a further dictum, the court declared that "a U.S. corporation with many foreign employees but fewer than 20 domestic ones would certainly be subject to the ADEA." *Id.* at 45. With all due respect, I am unable to embrace that alleged certainty.

As I see it, the root of the Second Circuit's decision is a belief that the purpose of the employee numerosity requirement is to protect smaller employers, and companies with a number of foreign employees in a foreign land are not small employers. *Id.* at 45.[3] Maybe not, but Congress could easily have put *that* concept in the statute, if that was what it meant. Moreover, the statute speaks with enough clarity to permit (nay require) one to stop with its own words, rather than undertaking to stravage in a wilderness of possible legislative purposes. *See Or. Natural Res. Council, Inc. v. Kantor,* 99 F.3d 334, 339 (9th Cir.1996). In fine, to the

**2.** 42 U.S.C. § 2000e(f).

**3.** *See also, Wells v. Clackamas Gastroenterology Assocs.,* 271 F.3d 903, 908–09 (9th Cir.

2001) (Graber, J., dissenting), *petition for cert. filed,* 70 U.S.L.W. 3625 (U.S. Mar. 26, 2002) (No. 01–1435).

extent that the Second Circuit's holding differs from my view, I disagree with it.

Kang, who felt oppressed by his employer, which hired only Koreans and thought of him and other Koreans as a kind of working elite, seeks to maintain a Title VII action against that employer, U. Lim America. However, U. Lim America had a very slight presence in this country, and very few United States citizens working for it anywhere. In fact, over the whole time he was with the company, it had a total of seven employees (five at any one time) and of those no more than two were United States citizens. Even were we to consider the employees of U. Lim de Mexico, no United States citizens would be added. Thus, the total of employees in the United States and United States citizen employees abroad never came even close to the 15 employees required before Title VII applies. *See* 42 U.S.C. § 2000e(b). None of Kang's arguments can immask that fact.[4]

## B. *California FEHA*

The district court dismissed Kang's wrongful termination claim because California's one year statute of limitations barred it. *See* Cal.Civ.Proc.Code § 340; *Funk v. Sperry Corp.*, 842 F.2d 1129, 1133 (9th Cir.1988). I agree with that.

Kang was terminated on February 2, 1998, and did not file his action until February 16, 1999. He perceives the difficulty, but believes that the statute should have been tolled while proceedings under Title VII, and under the California Fair Housing and Employment Act, Cal. Gov't Code § 12940, were pending. Of course,

California does apply equitable tolling principles when a party is pursuing one avenue of relief and others are possible. *See Arnold v. United States*, 816 F.2d 1306, 1312 (9th Cir.1987); *Addison v. California*, 21 Cal.3d 313, 319, 578 P.2d 941, 943–44, 146 Cal.Rptr. 224, 227 (1978).

I am satisfied that California would not apply equitable tolling here because the few days that an administrative proceeding was pending[5] ended long before the wrongful termination statute of limitations ran. Those proceedings did not interfere with his filing of the wrongful termination action; he could have filed it in a timely manner with no difficulty whatsoever. He was sent the last of his right to sue letters November 20, 1998, and, even without tolling he had until February 2, 1999, to file his action.

The California Supreme Court has pointed out that nothing actually impedes a person from filing his tort claim in a timely fashion and then amending to join a delayed FEHA claim later. *See Rojo v. Kliger*, 52 Cal.3d 65, 88, 801 P.2d 373, 388, 276 Cal.Rptr. 130, 145 (1990). It would, undoubtedly, look with a jaded eye upon Kang's assertion that he did not have to file his tort claim, even though he had his right to sue letter long before the statute of limitations expired. Kang cites no authority to the contrary. *Cf. Elkins v. Derby*, 12 Cal.3d 410, 413, 525 P.2d 81, 83, 115 Cal.Rptr. 641, 643 (1974) (statute of limitations expired while first action pending); *Friends of Mammoth v. Bd. of Supervisors*, 8 Cal.3d 247, 268, 502 P.2d 1049, 1063, 104 Cal.Rptr. 761, 775 (1972) (same);

---

4. Because U. Lim America is not covered by Title VII, neither is Yoon. In addition, individual defendants are not liable under Title VII. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993).

5. Kang expressly asked that there be no actual administrative proceeding and, thus, his claim was pending before the Equal Employment Opportunity Commission for a mere seven days and before the California Department of Fair Employment and Housing for an even shorter five days.

*Addison,* 21 Cal.3d at 319, 578 P.2d at 943–44, 146 Cal.Rptr. at 227 (same). Moreover, I do not see Kang's pro forma filings with the agencies and wait of months before filing his action as anything approaching "reasonable and good faith conduct" on his part. *Addison,* 21 Cal.3d at 319, 578 P.2d at 943, 146 Cal.Rptr. at 227.

Finally, even if the 12 days[6] during which his claims were before the public agencies tolled the statute of limitations, his wrongful termination action was still filed 14 days later, which was one day too late. As is too often the case, Kang, or his advisors, played chicken with the statute of limitations, and lost.

Thus, I respectfully dissent.

---

6. Kang asserts that because his DFEH complaint purports to have been signed by him on September 23, 1998, it must be taken as filed on that date, but the department's stamp shows it was actually received on October 15, 1998. The notice to sue states that as the date of filing, and because he asked for an immediate right-to-sue notice, it gave it to him on October 20, 1998.