101 F.3d 1392
 NOTICE: THIS IS AN UNPUBLISHED OPINION. Use FI CTA2 § 0.23 for rules regarding the publication and citation of unpublished opinions.
Simone S. DEWEY, Plaintiff-Appellant,
v.
PIT TELECOM NETHERLANDS, U.S., INC., Defendant-Appellee.
 No. 95-7838
 United States Court of Appeals,
Second Circuit.
 July 2, 1996.
 
 Valerie A. Hawkins, Hempstead, NY, for Appellant.
 Eileen Fields, Chadbourne & Parke LLP, New York City, for Appellee.
 Present: MINER, JACOBS, PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was submitted by counsel for appellant and was argued by counsel for appellee.
 Plaintiff-appellant Simone S. Dewey appeals from a judgment of the United States District Court for the Southern District of New York (Baer, J.) granting summary judgment in favor of defendant-appellee PTT Telecom Netherlands, U.S., Inc. ("PTT Telecom").
 
 
 1
 PTT Telecom is a wholly-owned subsidiary of PTT Netherlands U.S., Inc., a holding company and a wholly-owned subsidiary of PTT Telecom B.V. ("PTT Telecom B.V."). PTT Telecom B.V. is a subsidiary of Royal PTT Nederland N.V. ("Royal PTT"), an international corporation employing over 100,000 employees. PTT Telecom performs marketing for international telecommunications services offered by PTT Telecom B.V. and other corporations.
 
 
 2
 In August of 1992, PTT Telecom hired Dewey to fill the position of Director of Strategic Accounts, where she was responsible for selling telecommunication networks and had a personal sales goal of $750,000 per month. In December of 1992, Dewey received a poor performance evaluation from her supervisor, Wesley Hoover. On January 5, 1993, Hoover again informed Dewey that he was unhappy with her performance, noting that she had not been meeting her monthly sales goal of $750,000.
 
 
 3
 At a February 25, 1993 meeting with Hoover and Hal Turner, the President of PTT Telecom, Hoover informed Dewey that he was displeased with her job performance and inability to meet her monthly sales goal. Hoover presented Dewey with two choices. Either she could remain with PTT Telecom on probation, subject to meeting a one-million-dollar sales goal for the month of March, or she could resign. She was told that, if she chose to resign and agreed to sign a general release waiving her right to raise any claim against PTT Telecom, she would receive one month's salary and continuation of benefits. On Friday, February 26, 1993, Hoover granted Dewey additional time to consider her options. During the weekend, Dewey wrote letters to the President of PTT Telecom B.V. and to an employee of Royal PTT, believing that they could provide assistance with her employment situation.
 
 
 4
 On Monday, March 1, 1993, Dewey asked Hoover if she could remain with PTT Telecom for six months so that she could look for another job. Hoover rejected this request and asked Dewey whether she could guarantee that she would attain her monthly sales goal of $750,000. Dewey responded that no one could make such a guarantee. Hoover replied, "[T]hen you're leaving." On March 2, 1993, Dewey was presented with and signed a letter of resignation, which provided that Dewey would receive one month's pay and continuation of benefits. Thereafter, Dewey was presented with a document entitled "General Release," which provided that, in return for "valuable consideration," Dewey waived all claims against PTT Telecom and affiliated companies. Dewey claims that she signed the release without reading it. She left her job that same day.
 
 
 5
 In August of 1994, Dewey filed a complaint in district court, claiming that PTT Telecom had discriminated against her because of her race, gender, and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., 42 U.S.C. § 1981, and N.Y.Exec.Law § 296. PTT Telecom moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b). The district court converted the motion to a motion for summary judgment and allowed Dewey to conduct discovery.
 
 
 6
 By Opinion and Order dated July 18, 1995, the district court found that PTT Telecom had less than 15 employees, that PTT Telecom and Royal PTT are not a single employer, and therefore that PTT Telecom is not an "employer" under Title VII or the ADEA. By Supplemental Order and Opinion dated September 11, 1995, the district court found that Dewey knowingly and voluntarily executed the release, and therefore that she was barred from bringing her § 1981 and state law claims. The final judgment was entered on November 22, 1995.
 
 
 7
 On appeal, Dewey contends that the district court erred in finding that there was no issue of material fact as to whether PTT Telecom and its "parent corporation" are a single employer for purposes of Title VII and the ADEA. We disagree. "[A] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir.1995) (quotation omitted and alteration in original). We have noted that the second factor is the most crucial and that under this factor "the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" Id. (quotation omitted).
 
 
 8
 Assuming that the single employer theory is applicable when the entity sued has less than 15 employees, we believe that the district court properly determined that there are no genuine issues of material fact and that PTT Telecom and PTT Telecom B.V. or Royal PTT are not a single employer. First, as to centralized control of labor relations, Dewey presents no evidence showing that PTT Telecom B.V. or Royal PTT made any decision regarding her employment with PTT Telecom. Moreover, the undisputed evidence shows that neither PTT Telecom B.V. nor Royal PTT controlled the labor relations at PTT Telecom in any significant way.
 
 
 9
 Second, there is no evidence of interrelation of operations between PTT Telecom and Royal PTT or PTT Telecom B.V. PTT Telecom has its own separate offices, bank accounts, personnel policies, employee benefits, equipment, and financial and payroll records. Dewey attempts to establish interrelation of operations based on the fact that the majority of PTT Telecom's board of directors are employees of Royal PTT. However, this fact does not establish that Royal PTT exercises control over the day-to-day operations of PTT Telecom. Third, as to common management, there is nothing in the record to indicate that Royal PTT and PTT Telecom have any common officers or directors. Finally, as to common ownership, although PTT Telecom is an indirect subsidiary of Royal PTT, this factor, standing alone, is insufficient to establish that the two companies are a single employer. See Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir.1993).
 
 
 10
 Dewey next contends that the district court erred in finding that she knowingly and voluntarily entered into the general release waiving all of her claims against PTT Telecom. We disagree. In determining whether a release is entered into knowingly and voluntarily we examine the following factors:
 
 
 11
 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.
 
 
 12
 Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir.), cert. denied, 493 U.S. 924 (1989).
 
 
 13
 We think that the district court properly determined that there were no genuine issues of material fact and that Dewey had knowingly and voluntarily signed the release. Based on Dewey's college education and over twenty years of business experience, she should have understood the consequences of signing the release. Moreover, Dewey was given four days to decide whether to resign and receive compensation for executing the release or to remain at PTT Telecom and attempt to attain her sales goal. In addition, the release is easily understood as it is less than two typewritten pages in length and contains clear and simple language. Furthermore, by agreeing to resign and signing the release, Dewey received one month's salary and benefits, even though she was not entitled to these benefits under the terms of her employment contract. Finally, although Dewey did not consult an attorney prior to signing the release, there is nothing to indicate that she did not have the opportunity to do so.