Tara Lynn **HARRIEL**, Plaintiff,

v.

**DIALTONE, INC., and American Insurance Marketers, Inc.,** Defendants.

No. CIV.A. 00–D–992–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 26, 2001.

John Eric Barnett, Eileen L. Harris, Joseph (Jay) Brady Lewis, Law Offices of Jay Lewis, Montgomery, AL, for plaintiff.

Carla Cole Gilmore, Simeon F. Penton, Kaufman & Rothfeder, P.C., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant American Insurance Marketers' ("AIM") Motion For Summary Judgment ("Mot."), which was filed on August 3, 2001. Plaintiff Tara Lynn Harriel ("Harriel") filed a timely Response ("Resp.") on August 23. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that AIM's Motion is due to be denied.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201, insofar as the causes of action seek remedies under federal law. The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

The court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

This determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party, which

must designate specific facts remaining for trial and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An action will be dismissed when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

Harriel brought the present action under Title VII of the Civil Rights Act alleging sex and pregnancy discrimination against her former employers. In the matter presently before the court, AIM does not contest any of the factual allegations put forth in Harriel's Complaint. Rather, AIM asserts that it cannot be found liable insofar as it is not and never was Harriel's "employer" as the term is defined at 42 U.S.C. § 2000e(b). As such, the Motion presently before the court turns solely upon whether the facts surrounding AIM's relationship with Harriel are sufficient to raise a genuine issue as to whether that relationship can properly be deemed one of employment.

Although Harriel was officially employed by DialTone, Inc. ("DialTone") (Compl.¶ 4.), she alleges that the nexus between AIM and DialTone is such that they can both be regarded as her employer. For instance, it is undisputed that Harriel's paychecks were drawn on AIM's account. (Mot. at 2.) AIM asserts that its role as independent "paymaster" for Dial-Tone was its only relationship thereto. (*Id.* at 2–3.) Harriel asserts, however, that her health insurance policy was processed through AIM, and, indeed, that all DialTone receipts were sent to AIM. (Harriel Aff. at 1–2.)

In addition to these financial connections, several of AIM's corporate officers are also corporate officers for DialTone. (Resp. at 4.) In fact, the entities share the exact same address. (*Id.*) One of the officers in common, James Lane, serves as the President of AIM and is a member of DialTone's Board of Directors. (*Id.*) Lane was introduced to Harriel as the "owner" of DialTone, and it was to Lane that she was directed to give all DialTone receipts. (Harriel Aff. at 1.) Furthermore, Harriel was informed that all personnel decisions had to be approved by Lane; in fact, the pregnancy-related issue which lies at the heart of the present cause of action was effectuated under Lane's direction. (*Id.* at 1–2.)

## IV. DISCUSSION

According "a liberal construction of the term employer," the Eleventh Circuit has recognized three distinct theories under which multiple entities can be viewed in the aggregate. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir.1999). Harriel asks the court to view AIM and DialTone under the "integrated enterprise" test, under which "two ostensibly separate entities are highly integrated with respect to ownership and operations." *Id.* (internal quotations omitted).[1] There are four factors which courts consider in making this determination: "(1) interrelation of operations, (2) centralized control of labor operations, (3) common management, and (4) common ownership or financial control." *Id.* Not all factors need be present for the court

1. The other two theories are the "joint employer" test, in which one company retains sufficient control over the operations of another company with which it contracts, and the "agency" test where some level of control is dictated to a third party. In each of these cases, the two parties can be regarded as one under Title VII. *Lyes,* 166 F.3d at 1341.

to find that a single employer exists, nor is one factor alone controlling. *Id.* at n. 5. However, the second factor "is usually accorded greater weight than the others" insofar as the relevant issue in Title VII concern employment decisions. *Thornton v. Mercantile Stores Co.,* 13 F.Supp.2d 1282, 1291 (M.D.Ala.1998).

■ That special weight is accorded to the question of the control of labor operations is significant for present purposes given the evidence concerning the role played by Lane in both entities. Lane is the President of AIM, yet Harriel was informed that any actions with regard to employment policy at DialTone needed Lane's approval. Indeed, after Harriel had taken leave to have her child, she called to inquire about her future with DialTone but was told that Lane had been involved in a decision to terminate her. No evidence has been proffered to suggest the role played by Lane in AIM's employment decisions, but the dual roles he has played with regard to the two entities raises a genuine issue of material fact with regard to the question of centralized labor operations. *See, e.g., Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2nd Cir.1995) (precluding summary judgment in face of evidence that "all major employment decisions" needed parent corporation's approval).

There is also a genuine issue of material fact concerning the interrelatedness of operations. The paychecks sent to Harriel were drawn on AIM's account, and her insurance policy was processed through AIM. Harriel also was informed that all receipts should be sent to AIM via Lane. Not only does this suggest a nexus between DialTone and AIM when it comes to financial matters, but it also demonstrates that, in day-to-day matters, Lane paid little regard to the corporate structures. The court is unpersuaded that it should do otherwise, especially when the corporate offices share the same address. At the very least, a genuine issue of fact exists as to this factor. *See, e.g., McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933–34 (11th Cir.1987) (holding that summary judgment is improper when paychecks and bills are paid by parent, and where insurance policy goes through parent).

Finally, the court finds that there are facts from which a jury could infer common management between DialTone and AIM, as well as common ownership or financial control. Lane himself serves as AIM's President while also involving himself in the day-to-day aspects of DialTone. Indeed, he is on the DialTone Board of Directors along with David Godbold who also serves as AIM's Corporate Secretary. (Resp. at 4.) No evidence has been offered with regard to who owns either entity, but the fact that DialTone receipts were sent to Lane at AIM raises an inference of common financial control. AIM has not contested this factual allegation, so the court views it in the light most favorable to Harriel. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the very least, there is a genuine issue of material fact as to every element of the "single employer" test, and, when viewed as a whole, the facts are such that a reasonable jury could find that AIM was Harriel's employer. AIM has not disputed any of the evidence put forth by Harriel, so, viewing such evidence in the light most favorable to her, the court is compelled to deny summary judgment.

## V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that AIM's Mo-

tion For Summary Judgment be and the same is hereby DENIED.