*Carter v. TD Bank, N.A.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

STEVEN CARTER,

> *Plaintiff-Appellant,*

v.                                                                          No. 23-950

TD BANK, N.A.,

> *Defendant-Appellee.*

———————————————————————

For Plaintiff-Appellant:   JAMES V. SABATINI, Sabatini and Associates, LLC, Newington, CT.

For Defendant-Appellee:   MICHAEL C. SCHMIDT, Cozen O'Connor, New York, NY.

Appeal from a judgment of the United States District Court for the District of Connecticut (Sarala V. Nagala, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 9, 2023 judgment of the district court is **AFFIRMED**.

Steven Carter appeals from the district court's grant of summary judgment in favor of his former employer, TD Bank, N.A., on Carter's claims that he was fired from his position as a store manager due to his gender, disability, and request for paternity leave, in violation of Title VII, the Americans with Disabilities Act ("ADA"), and the Family Medical Leave Act ("FMLA"), respectively. Among other things, the district court concluded that Carter failed to raise a genuine dispute as to whether TD Bank's stated reason for firing him – that he opened customer accounts without authorization and possibly by forgery, as substantiated by an internal investigation – was a pretext for discrimination. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

2

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 152 (2d Cir. 2000). Summary judgment is appropriate only "where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks omitted). A dispute is "genuine" when the evidence on the issue "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

## I.     Title VII Gender Discrimination

When a Title VII discrimination claim is based on circumstantial evidence, we apply the familiar *McDonnell Douglas* burden-shifting framework to determine whether the plaintiff has shown evidence sufficient to survive a defendant's summary judgment motion. *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). To start, the plaintiff must "establish a *prima facie* case of discrimination by showing that (1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise

to an inference of discrimination." *Id.* at 570 (internal quotation marks omitted). If the plaintiff has established his *prima facie* case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* (internal quotation marks omitted). If the employer articulates such a reason, then the burden shifts back to the plaintiff to show at the third step either that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination," or that, "even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Id.* at 578. Here, the district court granted the motion based upon Carter's failure to meet his burden at the third step, concluding that he had not presented evidence from which a reasonable jury could find either that TD Bank's stated reason for firing him was false and a pretext for gender discrimination, or that TD Bank's decision to fire him was attributable in part to gender discrimination. We agree.

TD Bank's investigation into Carter was triggered when Carter's brother visited a TD Bank branch in Florida and notified the staff there that several accounts had been opened in his name without his knowledge or authorization. The employees at the Florida branch informed Carter's brother that the accounts

4

had been opened and funded in Connecticut just five days earlier. Carter's brother was adamant that the new accounts must be fraudulent because he had been in Delaware, not Connecticut, at the time they were opened. Accordingly, the Florida bank employees closed the new accounts and reported the suspected fraud to TD Bank's Northeast Regional Operations Officer, who then reported it to Carter's supervisor. The supervisor in turn informed TD Bank's Human Resources team.

An investigation followed, after which the investigator determined that "the case is substantiated for [f]orgery for Steven Carter." J. App'x at 206. The investigator summarized her findings:

> I did not find Steven to be credible during the interview. His statement that his brother "forgot" about the accounts that had just been opened is not plausible. . . . [H]is attempt to have his brother speak with the store employees in Florida in an attempt to gain information [about the investigation] all violates the bank's policies. The signatures on the account opening documents appear different than the signatures on the original account documents and the new signature collected. . . . It is plausible based on [his brother]'s own statements to the store employees on 11/11 and confirming that he was not in CT that Steven forged his brother's signature on the new account documents.

*Id.* at 210–11; *see also* Sp. App'x at 8–9. Based on these findings, the Human Resources team "recommend[ed] termination of employment for Steven for [f]orgery." J. App'x at 211; *see* Sp. App'x at 9. Carter's supervisor agreed, and

5

Carter's employment was terminated on December 3, 2019, approximately three weeks after his brother's complaint.

On appeal, Carter takes issue with the sufficiency of TD Bank's investigation, arguing that the investigator failed to interview a key witness – his brother – and was not engaged in a "fact-finding inquiry." Carter Br. at 33. But we are "decidedly not interested" in the adequacy of TD Bank's investigation, except insofar as it sheds light on "what *motivated*" the bank. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (internal quotation marks omitted). Carter has not presented any evidence of "bizarre or duplicitous processes" that might suggest that the investigation was pretextual. *Id.* at 216 n.7. On the contrary, the Human Resources investigator's decision to not interview Carter's brother was entirely unremarkable. The investigator already had an account of Carter's brother's contemporaneous statements to TD Bank employees in Florida, in which he made clear that he had no knowledge of the accounts that were opened in his name. Any after-the-fact statements from Carter's brother would have been both unnecessary and unreliable since, upon realizing that Carter was likely responsible for the newly opened accounts, Carter's brother indicated that he did not want to get Carter in trouble. *See* J. App'x at 210.

Equally unavailing is Carter's vague argument that two unidentified female employees were treated more leniently after committing unrelated acts of misconduct. While it is true that "[a] showing that similarly situated employees" outside the protected group "received more favorable treatment" can be evidence that the employer's proffered reason is pretextual, *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000), the plaintiff must as a threshold matter present evidence from which a reasonable factfinder could conclude that the comparator employees were indeed similarly situated, *i.e.*, that they "were subject to the same workplace standards" as the plaintiff and that "the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40.

Even crediting Carter's unsupported testimony about these two unidentified women, his argument fails because no reasonable factfinder could conclude on this record that the two women were similarly situated to Carter. One, according to Carter's account, was merely negligent in failing to *detect* fraudulent paperwork submitted by a customer – conduct that is categorically different from Carter's suspected forgery, which the investigator found to be not only "plausible" but "substantiated." J. App'x at 206, 210. The other woman, a bank teller, was apparently found to have committed an act of dishonesty that,

7

according to Carter, normally results in automatic termination. But beyond these vague assertions, Carter has pointed to no evidence from which a reasonable factfinder could conclude that this unidentified bank teller was subject to the same workplace standards and responsibilities as Carter, who was a store manager.

All that remains is the fact that the person hired to replace Carter was a woman. But while that may be enough to satisfy a plaintiff's initial burden to establish a *prima facie* case of gender discrimination, *see Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir. 1995), it is clearly insufficient to overcome an employer's legitimate, nondiscriminatory reason for its adverse action. Considering all of the evidence, we conclude that no reasonable factfinder could find on this record that Carter's termination for forgery was a pretext for gender discrimination, or that gender discrimination was otherwise a motivating factor in his termination. The district court therefore did not err in granting summary judgment on Carter's Title VII discrimination claim.

## II. Title VII Retaliation After Human Resources Conversation

"Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (alterations and

internal quotation marks omitted). Like Title VII discrimination claims, Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework, albeit with somewhat different steps. At the first step, the plaintiff bears the "burden to establish a *prima facie* case of retaliation by offering evidence that [he] participated in a protected activity, suffered an adverse employment action, and that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Id.* (internal quotation marks omitted). The burden then shifts at step two to the employer to "articulat[e] a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). At the third step, "the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was [a] but-for cause of the challenged employment action." *Id.* (citation and internal quotation marks omitted); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (holding that plaintiff making Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action"; it requires

simply "that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846.

Carter's briefing does not make clear what "practice made unlawful by Title VII" he opposed. *Ya-Chen Chen*, 805 F.3d at 70. The district court concluded that it was harassment, since Carter asserted that he had complained to a Human Resources employee about his supervisor in October 2019 – roughly three weeks before his brother alerted TD Bank to the unauthorized accounts, and six weeks before Carter was fired. On appeal, Carter argues that, given the short six-week period between his conversation with Human Resources and his termination, the district court erred in concluding that there was no genuine dispute as to whether retaliation was a but-for cause of his termination.

Again, we are unpersuaded. Given the forgery investigation, which Carter's supervisor did not initiate or conduct and which resulted in TD Bank's Human Resources team unequivocally recommending Carter's termination, no reasonable factfinder could find that Carter's termination somehow would not have happened but for his prior complaint to Human Resources. Simply put, the evidence Carter has adduced through discovery would not allow a reasonable factfinder to find the required but-for causal connection between his complaint

10

and his termination, despite the modest temporal proximity between the two. *See Zann Kwan*, 737 F.3d at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.").

### III. ADA Discrimination Based on Anxiety

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability, *see* 42 U.S.C. § 12112(a), and such claims are subject to a comparable variation on the *McDonnell Douglas* burden-shifting framework, *see Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). To satisfy the first step and make a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id.* (internal quotation marks omitted). The "burden to establish an initial *prima facie* case is, by design, minimal and de minimis." *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) (internal quotation marks omitted). If the plaintiff makes a *prima facie* case, the employer must "articulate some legitimate, nondiscriminatory reason for the employer's conduct." *Fox*, 918 F.3d

11

at 71 (internal quotation marks omitted). If the employer does so, the burden shifts back to the plaintiff to "demonstrate that the employer's assigned reason was a pretext or discriminatory in its application." *Id.* (alterations and internal quotation marks omitted). The plaintiff need not prove that discrimination was the employer's sole motivation, but discrimination must be a "but-for cause" of the adverse employment action. *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Carter claims that TD Bank fired him not because of the forgery investigation but because he suffered from an anxiety disorder. As with Carter's Title VII retaliation claim, this claim likewise fails. Once again, the record demonstrates that no reasonable factfinder could conclude that – notwithstanding TD Bank's "substantiated" concerns that Carter committed forgery and its HR Department's unequivocal recommendation that he be terminated – Carter would not have been fired but for the anxiety disorder that he revealed to his employer. Carter has not provided evidence that TD Bank was in any way motivated to terminate him because of his disability. The district court therefore did not err in granting summary judgment to TD Bank on Carter's disability discrimination claim.

**IV.    FMLA Retaliation After Paternity Leave Scheduled**

FMLA retaliation claims are also subject to the *McDonnell Douglas* burden shifting framework.    *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016).    At step one, a plaintiff must establish that:    (1) "he exercised rights protected under the FMLA"; (2) "he was qualified for his position"; (3) "he suffered an adverse employment action"; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."    *Id.* (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012)).    If the plaintiff makes such a *prima facie* case, then the burden shifts to the employer to "demonstrate a legitimate, non-discriminatory reason for its actions." *Id.*   The burden then shifts back to the plaintiff to "show that [the employer]'s proffered explanation is pretextual."    *Id.*    Like Title VII discrimination claims – and unlike ADA discrimination and Title VII retaliation claims – FMLA retaliation claims are subject to the more lenient "motivating factor" causation standard. *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). Under that standard, a plaintiff need only demonstrate that his exercise of his FMLA rights "was a motivating factor in the defendant's adverse employment action."    *Natofsky*, 921 F.3d at 347.

Notwithstanding this lower standard, Carter has failed to adduce evidence from which a reasonable factfinder could conclude that his planned (and approved) three-week paternity leave was a motivating factor for his termination. Approximately five months before the forgery investigation, Carter informed his supervisor that his wife was pregnant, and his supervisor responded by saying "ok, that's great." Sp. App'x at 33. While Carter testified that his supervisor's tone and demeanor changed "dramatically" after he informed the supervisor of the pregnancy, *id.*, he also testified that nobody at TD Bank said anything negative about him taking paternity leave. He further admitted that other male employees who reported to his supervisor were similarly granted parental leave without incident. Given these statements and the intervening forgery investigation, we conclude that no reasonable factfinder could find that Carter's termination was motivated, even in part, by a desire to retaliate against him for scheduling company-sanctioned paternity leave. The district court therefore did not err in granting summary judgment on Carter's FMLA retaliation claim.

*     *     *

14

We have considered Carter's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court