Mary MATSON, Plaintiff,

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**Case No. C10–1528 RAJ.**

United States District Court, W.D. Washington, at Seattle.

May 25, 2012.

Donald H. Mullins, Jacob D.C. Humphreys, Badgley Mullins Law Group, Seattle, WA, for Plaintiff.

Javier Garcia, Michael T. Reynvaan, Perkins Coie, Seattle, WA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RICHARD A. JONES, District Judge.

### I. INTRODUCTION

This matter comes before the court on defendant United Parcel Service, Inc.'s ("UPS") motion for summary judgment. Dkt. # 31. Plaintiff Mary Matson alleges three causes of action under Washington State law: discrimination on the basis of race and/or gender, discrimination/retaliation on the basis of opposition to unlawful practices, and wrongful termination in violation of public policy. Dkt. # 1 at 7–11; Dkt. # 42 (Opp'n) at 10:22–11:1. Plaintiff also alleges a claim for hostile work environment on the basis of race and/or gender. Dkt. # 1 at 8 ¶ 6.

Plaintiff moves to strike Exhibit B to the Declaration of Brian Coy (Dkt. # 32 at 31–33), because it is DIAD[1] records that

---

**1.** "A 'DIAD' is an electronic device that each UPS delivery driver carries and uses during their daily dispatch to input and record delivery information. UPS has a software program that allows UPS to enter the tracking number of a package and see the GPS location of the driver's DIAD when: (1) the package is scanned; (2) the delivery is entered; and (3) the stop is completed." Dkt. # 32 (Coy Decl.) ¶ 4.

were requested by plaintiff during discovery, but were not produced until after the discovery cut-off. Dkt. # 42 at 24 (Opp'n); Dkt. # 32 (Coy Decl.) ¶ 6. Plaintiff argues that she was unable to depose Mr. Coy, who ostensibly prepared the exhibit, because of the late production. Defendant argues that it did not rely on the document to discharge Ms. Matson, but that it used a program called "Smart Shop" which allowed UPS to review the GPS location of DIAD scans. However, Mr. Coy admits that he used the information in Exhibit B to create the maps. Dkt. # 32 (Coy Decl.) ¶ 6. In response to plaintiff's motion to strike, Mr. Coy provides a new explanation for the origin of the information of the maps as the Smart Shop program. *See* Dkt. # 51 (2d Coy Decl.) ¶ 4. Because of the seemingly inconsistent statements, it is unclear to the court whether defendant relied on the information in Exhibit B in creating the maps, and therefore relied on it in discharging plaintiff. Because plaintiff was prejudiced by her inability to depose Mr. Coy regarding this document, the court GRANTS plaintiff's motion to strike, and strikes Exhibit B to the Coy Declaration for purposes of this motion. If plaintiff wishes to depose Mr. Coy regarding Exhibit B, she may do so within seven days of this order at a mutually convenient time.

Having considered the memoranda, supplemental memoranda,[2] exhibits, oral argument, and the record herein, the court GRANTS in part and DENIES in part UPS's motion for summary judgment.

## II. BACKGROUND

Ms. Matson, a Caucasian female, was hired by UPS in 2002. In 2003 and 2004, Ms. Matson claims that a few African–American female employees routinely called her "white honkey" or "cracker." One of those employees also allegedly charged and "body-slammed" Ms. Matson against a package belt. Ms. Matson reported the name-calling and physical assault to management, who responded by moving Ms. Matson to a different work area. Ms. Matson concedes that those employees stopped calling her names after she was moved. In July through November 2007 and February through June 2008, Ms. Matson claims that management routinely offered "extra work" to male drivers with less seniority than woman drivers, despite UPS's policy to offer "extra work" to the most senior driver. Dkt. # 44 (Matson Decl.) ¶ 6. This "extra work" resulted in increased hours and increased pay. In 2008, Ms. Matson claims that different African–American employees called her "white honkey." Ms. Matson claims that she repeatedly complained to management about their practice of providing "extra work" to male drivers instead of female drivers, that she filed numerous grievances, and that she filed a complaint to the Equal Employment Opportunity Commission ("EEOC") and the Washington Hu-

2. On April 25, 2012, plaintiff moved for leave to supplement the record with evidence acquired as a result of the court's granting of a motion to compel. Dkt. # 57. At least some of the evidence is relevant to plaintiff's claim for gender discrimination. *See* Dkt. # 58 (Supp. Matson Decl.) ¶¶ 2–4; # 59 (Exs. to Supp. Humphreys Decl.), Ex. A (Veentjer Depo.) at 25:19–26:1, 46:7–50:24, 68:14–70:17, Exs. E, F. However, because the court has found the evidence presented in the original briefing is sufficient to send plaintiff's claim for gender discrimination to a jury, the court need not consider the newly acquired evidence. Accordingly, the court DENIES plaintiff's motion for supplemental briefing. Dkt. # 57. Additionally, defendant has not moved for leave to supplement the record. The court has reviewed the Veentjer deposition transcript, but has disregarded other evidence that could have been brought to the court's attention in defendant's original briefing.

man Rights Commission ("WHRC"). Ms. Matson also filed two workers' compensation claims in August 2008 and November 2009. In January 2010, UPS investigated two drivers, Ms. Matson and Mike Frausto, regarding over allowed hours. As a result of that investigation, UPS determined that both Ms. Matson and Mr. Fausto had falsified delivery records, four and eleven times, respectively. UPS terminated both Ms. Matson and Mr. Fausto for "proven dishonesty." However, Mr. Fausto's employment was later reinstated.

## III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## A. Discrimination on Basis of Gender (RCW 49.60.180)[3]

■ In employment discrimination cases where plaintiff has not attempted to demonstrate direct evidence of discriminatory intent, the *McDonnell Douglas* burden-shifting analysis augments the familiar summary judgment standard. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir.2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Although the *McDonnell Douglas* analysis evolved to address employment discrimination claims invoking federal law, Washington courts apply substantially the same standard to claims invoking the Washington Law Against Discrimination ("WLAD"). *Kastanis v. Educ. Emps. Credit Union*, 122 Wash.2d 483, 490, 859 P.2d 26 (1993). Under the *McDonnell Douglas* framework, plaintiff must offer evidence supporting a prima face case of unlawful discrimination. *Id.* If she succeeds, the burden shifts to UPS to produce evidence of a lawful motive for terminating her. *Id.* at 491, 859 P.2d 26. If UPS succeeds, plaintiff is obligated to produce evidence that UPS's stated lawful motive is pretext. *Id.* If there is sufficient evidence of pretext, the case must go to the jury. *Id.* The WLAD prohibits employers from discharging or discriminating against any person in the terms or conditions of employment because of, *inter alia*, a person's sex. RCW 49.60.180(2) & (3).

---

**3.** Plaintiff has apparently abandoned her claim for discrimination on the basis of race. Accordingly, the court GRANTS defendant's motion for summary judgment with respect to plaintiff's claim for race discrimination under Washington State law.

■ A prima facie case of employment discrimination alleging disparate treatment has four elements: (1) the employee is a member of a protected class, (2) the employee is qualified for the employment position or performing substantially equal work, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment. *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 818 (9th Cir.2002); *Davis v. West One Auto. Group,* 140 Wash.App. 449, 459, 166 P.3d 807 (2007). In opposing summary judgment, an employee's evidentiary burden in establishing a prima facie case is not onerous. *Aragon,* 292 F.3d at 659 (The "requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary judgment is *minimal* and does not even need to rise to the level of a preponderance of the evidence.") (emphasis in original).

Ms. Matson is a woman, and therefore a member of a protected class. Defendant has not disputed that Ms. Matson was qualified for the position prior to the alleged falsification of records. *See* Dkt. # 43 (Ex. C to Humphreys Decl. at 8:47–9:5). Plaintiff has provided evidence that UPS managers offered extra work to male employees with lower seniority than her, that UPS managers ensured that male drivers were assigned preferable vehicles, that her employment was terminated, that

her position was replaced by a male, and that a male employee, who had been terminated for similar reasons to plaintiff, was reinstated.[4] Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17, 19; Dkt. # 45 (Wheeler Decl.) ¶¶ 7–9. Accordingly, Ms. Matson has met prong one, and the burden shifts to defendant to demonstrate a lawful motive for discharge.[5]

Pursuant to the collective bargaining agreement ("CBA") between UPS and the International Teamsters Union, all UPS employees are subject to immediate discharge without notice for proven dishonesty. Dkt. # 34 (Ex. B to Mizumoto Decl. at) ¶ 2. Defendant has presented evidence that plaintiff falsified delivery records on four occasions in January 2010, which subjected her to discharge for proven dishonesty. Dkt. # 32 (Coy Decl.) ¶¶ 5–7; # 34–1 at 13 (Ex. E to Mizumoto Decl.). UPS has met its burden under *McDonnell Douglas,* and the burden shifts back to plaintiff to present sufficient evidence of pretext.

■ A plaintiff "can show pretext in two ways: either 'directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1068 (9th Cir.2003) (quoting *Texas Dep't of Cmty. Affairs v.*

---

4. The court notes that defendant has provided evidence that four other women occasionally received "extra work." Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 159:2–162:15, 300:1–302:25, 382:11–18, 388:2–389:9). Plaintiff has directed the court to evidence that at least some of those situations involved a non-management employee who unilaterally gave a package to a female driver (Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 382:3–13)), a female driver disclaiming part of her duties which created "extra work" that was then given to a male driver (Dkt. # 33–3 (Ex. A to Garcia Decl.) at 5), and instances

where management made a point to state that it was not given to a man (Dkt. # 33–1) (Ex. A to Garcia Decl., Matson Depo. at 301:7–15, 388:12–22). These factual disputes do not affect whether plaintiff has met her initial burden, which she has.

5. Defendant argues that plaintiff has not established "a prima facie case of discrimination because she was discharged for proven dishonesty[.]" Dkt. # 31 at 15. However, this argument is relevant to defendant's burden of production that she was discharged for a lawful reason.

**1138**

*Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Where there is direct evidence of an employer's discriminatory intent, the Ninth Circuit has held that plaintiff need only show little or minimal evidence of discrimination to show pretext. *Kang v. U. Lim. Am., Inc.,* 296 F.3d 810, 819 (9th Cir.2002). Where evidence of pretext is circumstantial, rather than direct, the Ninth Circuit has held that plaintiff must produce "specific" and "substantial" facts to create a triable issue of pretext. *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1113 (9th Cir. 2011). In *Cornwell v. Electra Central Credit Union,* the Ninth Circuit addressed the differing amount of evidence required for direct versus circumstantial evidence of discrimination. 439 F.3d 1018 (9th Cir. 2006) (Fisher, J., Gould, J. Bea, J.). The Ninth Circuit explained its reasoning in a prior case in which it reasoned that the Supreme Court's decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) required that "circumstantial and direct evidence should be treated alike." *Id.* at 1030. The *Cornwell* court relied on "the Supreme Court's recognition in *Costa* that circumstantial evidence may be 'more certain, satisfying and persuasive than direct evidence[.]' " *Id.* The *Cornwell* court concluded that in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence. *Id.* The court recognized: "Although there may be some tension in our post-*Costa* cases on this point—several of our cases decided after *Costa* repeat the *Godwin* [*v. Hunt Wesson, Inc.,* 150 F.3d 1217 (9th Cir.1998) ] requirement

that a plaintiff's circumstantial evidence of pretext must be 'specific' and 'substantial'—this panel may not overturn Ninth Circuit precedents in the absence of 'intervening higher authority' that is 'clearly irreconcilable' with a prior circuit holding." *Id.* at 1030–31. This court need not decide this issue, because the court finds that plaintiff has presented specific and substantial evidence to create an issue of material fact as to pretext.

█ Plaintiff has presented evidence that a male UPS driver, Mike Frausto, falsified delivery records eleven times, was terminated for falsifying delivery records, and was later reinstated. Dkt. # 43 (Ex. A to Humphreys Decl., Coy Depo. at 102:7–16, 112:17–25, 114:1–2). Both Mr. Frausto and Ms. Matson were early A.M drivers, reported to the same managers, and performed nearly identical job duties. Dkt. # 44 (Matson Decl.) ¶ 19. Ms. Matson only had four instances of falsifying delivery records, and she was not reinstated. Several witnesses have indicated that despite UPS's honesty policy, management encouraged the drivers to scan packages prior to being at the delivery location to ensure the records reflect that the packages arrived on time, and that other drivers were not disciplined for similar conduct. Dkt. # 43 (Ex. A to Humphrys Decl., Coy Depo. at 102:24–103:7, 106:25–107:23);[6] # 44 (Matson Decl.) ¶ 16; # 45 (Wheeler Decl.) ¶ 19; # 46 (Copeland Decl.) ¶ 13. Plaintiff also showed Brian McKinney, a manager, a copy of a male driver's delivery records that she believed showed that the male driver was pre-recording packages, making false entries, and delivering packages that should have

---

6. The court notes that although this evidence contains hearsay, the court has focused on the admissibility of the evidence's content, not on the admissibility of the evidence's form. *See Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir.2003). Presumably, Mr. Fausto would be available at trial to testify regarding whether management encouraged pre-recording packages.

been provided to her. Dkt. # 44 (Matson Decl.) ¶ 17. That same record was shown to Brian Coy during his deposition (*id.* ¶ 18), and Mr. Coy testified that had he seen the delivery records, he would have conducted an investigation similar to the investigation he conducted with Ms. Matson and Mr. Fausto (D kt. # 43 (Ex. A to Humphreys Decl., Coy Depo. at 125:19–128:13)). No such investigation occurred.[7] Finally, plaintiff has provided evidence that "extra work" was routinely offered to male drivers with less seniority than woman drivers. Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17, 19; Dkt. # 45 (Wheeler Decl.) ¶¶ 7–9; Dkt. # 46 (Copeland Decl.) ¶ 6.

Defendant places large emphasis on a package it argues plaintiff "fraudulently altered to hide her dishonesty." However, plaintiff claims that she misread the address label as "6075 185th Ave" instead of "6675 185th Ave" because it was dark and the vehicle was poorly lit. Dkt. # 44 (Matson Decl.) ¶ 21. She claims that after she entered that the address did not exist in the DIAD, she read and recognized the name of the company. *Id.* She states that she then crossed out what she believed to be the incorrect address and wrote in the correct address. *Id.* In a prior interview regarding this delivery record, Ms. Matson allegedly stated that the label had been written over and said something different than the correct address. Dkt. # 51 at 6 (Ex. A to 2d Coy Decl.). This statement is not entirely inconsistent with Ms. Matson's declaration because "crossed out" is not necessarily the same as "written over." The court must construe the evidence in the light most favorable to plaintiff, and may not make a credibility assessment on summary judgment.[8] The court cannot take defendant's conclusion of fraudulent alteration as true in the face of a plausible, reasonable explanation of an honest mistake by plaintiff. Accordingly, evidence that the package was altered is not dispositive on the issue of pretext.

The court finds that the record contains reasonable but competing inferences of both discrimination and nondiscrimination on the basis of gender. *See Hill v. BCTI Income Fund–I,* 144 Wash.2d 172, 186, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.,* 157 Wash.2d 214, 137 P.3d 844 (2006). Accordingly, plaintiff's claim for gender discrimination must be resolved by a jury.

### B. Hostile Work Environment on the Basis of Race and Gender

To establish a prima facie case of hostile work environment, Ms. Matson must show that the harassment (1) was unwelcome, (2) was because of her sex or race, (3) affected the terms and conditions of her employment, and (4) is imputable to UPS. *Antonius v. King County,* 153 Wash.2d 256, 261, 103 P.3d 729 (2004).

---

7. The court notes that although Mr. Coy could not recall what the time frame was for investigating other instances of falsifications with other drivers, he believed it would have been around two weeks. Dkt. # 43 (Ex. A to Humphreys Decl., Coy Depo. at 140:3–14). Given that plaintiff has presented evidence of at least one driver who may have falsified delivery records and evidence that management encouraged drivers to pre-record packages, which would seem to be a violation of UPS's honesty policy, a jury may conclude that the two-week timeframe for investigations of falsified delivery records was insufficient to determine whether management encouraged drivers to pre-record deliveries, or whether management selectively enforced that practice.

8. During oral argument, defendant argued that the court should not credit Ms. Matson's "bare assertions." Ms. Matson has not made "bare assertions." She has submitted a sworn declaration and deposition testimony. These are admissible facts that the court must consider, and whether or not her testimony should be credited is the province of the jury.

Conduct is harassing when it is "unwelcome in the sense that the plaintiff-employee regarded the conduct as undesirable or offensive." *Glasgow v. Georgia–Pacific Corp.*, 103 Wash.2d 401, 406, 693 P.2d 708 (1985). The third element requires that the harassment be sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment, to be determined with regard to the totality of the circumstances. *Id.* at 406–07, 693 P.2d 708. With respect to the fourth element, to "hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." *Glasgow*, 103 Wash.2d at 407, 693 P.2d 708.

### 1. *Race*

Defendant argues that plaintiff's race-based hostile work environment claim fails on three grounds: (1) Ms. Matson's allegations are time-barred by the statute of limitations, (2) Ms. Matson's alleged facts are not severe or pervasive, and (3) Ms. Matson's allegations of hostile work environment are not imputable to UPS. Dkt. # 31 (Mot.) at 24–26. Because the court finds that Ms. Matson has not met her prima facie burden even if the court considered the allegedly time-barred allegations, the court need not address the statute of limitations issue.

 Ms. Matson claims that she was called "cracker" and "white honkey" frequently in 2003 and 2004. Dkt. # 44 (Matson Decl.) ¶ 24. In 2004, an employee who routinely referred to Ms. Matson as

"cracker" or "white honkey," charged and "body-slammed" Ms. Matson against a package belt. *Id.* Ms. Matson reported the name-calling and alleged physical assault to management. *Id.* After she reported this conduct, managers moved Ms. Matson to a different work area, and she concedes that the name calling and harassment stopped after she was moved. *Id.;* Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 46:12–15, 50:19–51:2). The fact that the race-based name calling by these particular individuals did not occur again is proof that defendant's response was reasonable and adequate as a matter of law. *Francom v. Costco Wholesale Corp.*, 98 Wash.App. 845, 857, 991 P.2d 1182 (2000).

 Ms. Matson also claims that the name-calling resumed in 2008 by different employees. However, she only identifies one race-based comment[9] that occurred when she was listening to music, and some employees stated, "you don't listen to that white honkey [sic]." Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 51:10–55:10). There is no evidence that plaintiff reported the name calling that occurred in 2008 to management. However, Ms. Matson argues that she reported the 2008 "race-based hostility" to management. Dkt. # 42 at 21. The only evidence plaintiff cites is a June 2008 email chain, in which a manager describes that Ms. Matson complained that the two African–American employees who had called her names in 2003 and 2004 were "gang banging." Dkt. # 49 at 5 (Ex. A to 2d Mizumoto Decl.). Although she claims that she reported a hostile work environment in June 2008, Ms. Matson does not dispute that her complaint to management in June

---

**9.** Although Ms. Matson claims that the employee who had body-slammed her in 2004 "continued to make threatening gestures towards [her], including jumping at [her] and charging at [her], there is no evidence that the threatening gestures were made because of Ms. Matson's Caucasian race."

2008 was that two African–American women were "gang banging." Dkt. # 44 (Matson Compl.) ¶ 27. Nor does Ms. Matson explain what conduct or words were used by the individuals that led her to believe they were "gang banging," or whether the alleged conduct or words were directed at her or made because of her Caucasian race.

Plaintiff has failed to establish a prima facie case of race-based hostile work environment, because the alleged conduct of her coworkers, even in the aggregate, was not severe or pervasive, and, even if it was, the alleged hostile work environment was not attributable to UPS.

### 2. Gender

Defendant first argues that plaintiff's gender-based hostile work environment claim fails because it is preempted by section 301 of the Labor Management Relations Act ("LMRA"). Defendant did not identify a single provision of the CBA that would require interpretation or is disputed in its briefing. In oral argument, defendant identified seven provisions and provided the court a copy of the CBA with those provisions. However, those provisions are not in the record before the court because they were not filed with defendant's briefing. The court finds no extenuating circumstances that would warrant admitting new evidence that could have been brought to the court's attention earlier with the exercise of reasonable diligence. See Dkt. # 67 (Minute Order) at 3 ("The court will not accept any new evidence barring exceptional circumstances"). Even if the court did consider the CBA provisions, it would find that no interpretation would be necessary for purposes of Ms. Matson's gender-based hostile work environment claim, and plaintiff does not dispute the meaning of any of its terms. See Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir.2007) (No preemption where there was no dispute over the meaning of any terms in the collective bargaining agreement, and resolution of the central issue of discrimination did not depend on interpretation of the collective bargaining agreement); Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9th Cir.2001) ("If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.").

Defendant also argues that Ms. Matson's hostile work environment claim based on work assignments fails because women were assigned extra work as well, and her claims are nothing more than alleged seniority violations for which Ms. Matson already was compensated through the CBA's grievance procedures. Plaintiff argues that UPS created a gender-based hostile work environment by routinely assigning work to male employees that should have gone to Ms. Matson.

 Unlike a disparate treatment claim, which requires an adverse employment action, a hostile work environment claim focuses on the cumulative effect of a series of actions, where the individual actions are not adverse employment actions. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1027–28 (9th Cir. 2004), amended by 419 F.3d 885 (9th Cir. 2005). "In determining whether harassment occurs 'because of sex', the appropriate question is: 'would the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex?'" Payne v. Children's Home Soc. of Wash., Inc., 77 Wash.App. 507, 514, 892 P.2d 1102 (1995) (quoting Glasgow, 103 Wash.2d at 406, 693 P.2d 708). Additionally, the "fact that discriminatory behavior is not directed at all members of plaintiff's gender is not fatal, so long as the plaintiff shows if she had been of the opposite

gender, she would not have been so treated." *Id.*

 Here, Ms. Matson has presented evidence from two other women, in addition to her own testimony, that management routinely offered "extra work" to male drivers with less seniority than woman drivers. Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 102:13–23, 208:10–25, 211:9–13); Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17, 19; Dkt. # 45 (Wheeler Decl.) ¶¶ 7–9; Dkt. # 46 (Copeland Decl.) ¶ 6. There is also evidence that certain managers would hide packages for male employees rather than alerting all drivers in the area to the package. Dkt. # 46 (Copeland Decl.) ¶ 6. Although a close call, the court believes that plaintiff has raised a genuine issue of material fact with respect to whether plaintiff was caused to suffer harassment because of her sex.

## C. Discrimination on the Basis of Opposition to Unlawful Practice (RCW 49.60.210)

 RCW 49.60.210 prohibits employers from terminating or otherwise discriminating against an employee because he or she opposed acts violating the WLAD. RCW 49.60.210; *Hollenback v. Shriners Hospitals for Children*, 149 Wash.App. 810, 821, 206 P.3d 337 (2009). Washington courts have adopted the *McDonnell Douglas* burden shifting framework with respect to retaliation claims. To establish a prima facie case of retaliation under RCW 49.60.210, plaintiff must demonstrate that (1) she engaged in statutorily protected activity, (2) UPS took some adverse employment action against her, and (3) there is a causal connection between the opposition and the discharge. *Graves v. Dep't of Game*, 76 Wash.App. 705, 711, 887 P.2d

424 (1994). If plaintiff establishes a prima facie case, the evidentiary burden shifts to the employer to produce admissible evidence of a legitimate, non-retaliatory reason for the discharge. *Hollenback*, 149 Wash.App. at 823, 206 P.3d 337. If the employer meets its burden, the presumption is removed and the employee must then establish a genuine issue of material fact as to pretext. *Id.* "The plaintiff need not show that retaliation was the only or 'but for' cause of the adverse employment action, but he or she must establish that it was at least a substantial factor." *Id.*

Defendant argues that Ms. Matson never wrote anything in her grievance to indicate that gender discrimination was an issue. Dkt. # 31 (Mot.) at 23. However, Ms. Matson has testified that when she attempted to allege gender discrimination in the grievance, the union told her that it would not accept a grievance that alleged discrimination, and that she would have to rewrite the grievance to only allege seniority violations.[10] Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 208:20–25, 212:14–18, 402:13–403:14); Dkt. # 44 (Matson Decl.) ¶ 9. Ms. Matson also repeatedly made oral complaints of gender discrimination to management. Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 212:25–213:5, 225:3–8, 227:3–12); Dkt. # 44 (Matson Decl.) ¶¶ 6–7. Indeed, the fact that management emphasized when extra work was given to a woman is evidence that management knew of Ms. Matson's gender discrimination complaints. *See* Dkt. # 33–1 (Ex. A to Garcia Decl., Matson Depo. at 160:7–9, 301:7–15, 388:12–17). When management failed to take action, Ms. Matson informed UPS managers that she would be forced to file charges with the EEOC if they did not stop the gender discrimina-

10. During oral argument, defendant argued that this was simply not true. Again, the court cannot make a credibility determination on summary judgment. Additionally, defen-

dant has not presented any evidence that disputes Ms. Matson's testimony, and, even if it did, that dispute would be resolved in her favor.

tion. Dkt. # 44 (Matson Decl.) ¶ 6.[11] In September 2008, Ms. Matson filed a complaint with the EEOC and the WHRC alleging gender discrimination. *Id.* ¶ 12.[12] Accordingly, plaintiff has demonstrated that she engaged in statutorily protected activity.

Defendant argues that there is no causal connection between her discharge and her complaints of discrimination. Dkt. # 31 (Mot.) at 23. Plaintiff argues that the time Ms. Matson was on medical leave should be excluded in calculating the length of time between the complaint and UPS commencing the investigation that led to plaintiff's termination. Dkt. # 42 (Opp'n) at 19.

■■■ One factor supporting retaliatory motive is proximity in time between the protected activity and the employment action. *Francom,* 98 Wash.App. at 862, 991 P.2d 1182. In *Coszalter v. City of Salem,* 320 F.3d 968, 978 (9th Cir.2003), the Ninth Circuit rejected "any bright-line rule about the timing of retaliation." The *Coszalter* court stated:

> There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in light of the timing and the surrounding circumstances. In some cases, the totality of the facts may form

such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.

*Id.*

Here, Ms. Matson was discharged in February 2010, nearly seventeen months after she filed her EEOC and WHRC complaint. However, Ms. Matson made repeated complaints of gender discrimination during July through November 2007 and February through June 2008. Dkt. # 44 (Matson Decl.) ¶ 6. In May 2008, plaintiff told UPS managers that she would be forced to file EEOC charges if the gender discrimination did not stop. *Id.* On August 28, 2008, Ms. Matson's doctor removed her from work as a result of a work injury. *Id.* ¶ 11. On September 8, 2008, Ms. Matson filed her complaint with the WHRC and the EEOC. *Id.* ¶ 12. As a result of the severity of her injury, Ms. Matson was on medical leave until November 15, 2009. *Id.* ¶ 13. In early January 2010, only a couple months after her return to work, UPS began the investigation that eventually led to Ms. Matson's termination. Based on these factual circumstances, a jury could reasonably infer that the temporal proximity between her complaints and the investigation, excluding the time she was on medical leave,[13] could

---

11. The court notes that the June 19, 2008 email communications in which Ms. Matson threatened to seek remedy with the EEOC appears to be related to Ms. Matson's claim for race-based hostile work environment, rather than gender discrimination. Dkt. # 43 at 41 (Ex. A to Humphreys Decl., Ex. 1 to Coy Depo. [UPS 1062]); Dkt. # 49 at 5 (Ex. A to 2d Mizumoto Decl.).

12. Ms. Mizumoto, a human resources manager, admits that she investigated Ms. Matson's

WHRC complaint and coordinated UPS's response. Dkt. # 34 (Mizumoto Decl.) ¶ 1.

13. The parties addressed whether the time Ms. Matson was on leave should be excluded during oral argument. Her repeated complaints of gender discrimination and her threat to file an EEOC complaint leading up to her work injury, combined with the investigation that started within two months of her return from medical leave could support an inference of retaliatory motive. The court is persuaded that a jury could reasonably find

support an inference of retaliatory motive.

Plaintiff also relies on an email to demonstrate retaliatory motive. In the initial email, Mr. Murphy reports to Mr. Coy, Ms. Mizumoto, Geoffrey McKenzie and Charlie Beswick on June 19, 2008:

> I am uncertain as to which of you would take the lead on this. After speaking with Charlie yesterday, I decided to present the issue to both of you. In a nutshell, Mary Matson confronted me yesterday complaining that we are allowing a hostile work environment to exist and if not rectified, she will seek remedy via the E.E.O.C.
>
> What concerned me was the example she cited as evidence of the alleged hostile work environment. Mary complained about Carmen Pickering and Linda Hay "gang banging" out at the EAM tent. When Mary repeated the allegation of gang banging, I asked her to clarify what she meant by the term. She did not respond. I find it highly unlikely that Carmen or Linda would engage in any sort of behavior that could remotely be described as gang banging. I do find it disturbing, prejudicial, and inappropriate if Mary is characterizing a conversation between two African–American women as "gang banging."

Please advise as to the next appropriate course of action. Dkt. # 49 at 5 (Ex. A to 2d Mizumoto Decl.). Mr. McKenzie responded: "Can Brian come to BFI and interview Mary and the two individuals, if [sic] there was some form of threatening conversation between the two to constitute this we need to take appropriate action." *Id.* Mr. Veentjer responded: "When this investigation is complete I would like to know the response from Mary. Depending on her answers this could lead to the next step in progressive discipline." *Id.* There

are two competing, reasonable interpretations of this email. The first is that Ms. Matson's statement that she would file a complaint with the EEOC had a causal connection with Mr. Veentjer's threat of progressive discipline. The second is that the threat of discipline was only connected to the investigation of the allegedly threatening conversations. The court construes the competing interpretations in plaintiff's favor.

Accordingly, the court finds that a reasonable juror could find a causal connection between the threat of discipline and Ms. Matson's complaints of gender discrimination and hostile work environment. Plaintiff has made a prima facie case of retaliation under the WLAD.

 The burden then shifts to defendant to demonstrate a legitimate reason for the termination. As discussed above, UPS has met this burden of production. The burden shifts back to plaintiff to show that the reason is pretext or to show that although UPS's stated reason is legitimate, her complaints of discrimination and hostile work environment and her filing the EEOC complaint was a substantial factor motivating the discharge. Given the totality of the circumstances as described above, although a close call, a reasonable juror could find that her complaints of discrimination and hostile work environment and her filing the EEOC complaint was a substantial factor motivating the discharge. Plaintiff has demonstrated a genuine issue of material fact as to pretext.

Accordingly, plaintiff's claim for discrimination on the basis of opposition to unlawful practice (RCW 49.60.210) must go to the jury.

---

that, given the factual circumstances, the timeframe should be excluded, because UPS

could not legitimately terminate Ms. Matson while she was on medical leave.

## D. Wrongful Termination in Violation of Public Policy

 Plaintiff alleges a common law cause of action for wrongful termination in violation of public policy. *See Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wash.2d 46, 53, 821 P.2d 18 (1991) ("RCW 51.48.025 is not mandatory and exclusive; a worker may file a tort claim for wrongful discharge based upon allegations that the employer discharged the worker in retaliation for having filed or expressed an intent to file a worker's compensation claim, independent of the statute."). To establish a prima facie case for retaliatory discharge, plaintiff must show that (1) she filed a workers' compensation claim, (2) she was discharged, and (3) there is a causal connection between filing her workers' compensation claim and the discharge. *Id.* at 68, 821 P.2d 18. In establishing the causal connection, plaintiff must produce evidence that filing her workers' compensation claim was a cause of the firing. *Id.* at 70, 821 P.2d 18. In so doing, she may use circumstantial evidence such as the proximity in time between the claim and the firing, coupled with evidence of satisfactory work performance and supervisory evaluations. *Id.* at 69, 821 P.2d 18. In recognition of the difficulty of proving motive, Washington courts allow an employee to establish the causation element of the prima facie case by merely showing that she filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged. *Anica v. Wal–Mart Stores, Inc.*, 120 Wash. App. 481, 491, 84 P.3d 1231 (2004).

Plaintiff filed her second workers' compensation claim around November or December 2009. Dkt. # 44 (Matson Decl.) ¶ 13–14. In January 2010, UPS began its investigation that led to plaintiff's termination in February 2010. Defendant has not disputed that plaintiff performed satisfactory work prior to the investigation. Accordingly, plaintiff has met her prima facie burden.

 The burden then shifts to defendant to demonstrate a legitimate reason for the termination. As discussed above, UPS has met this burden of production. The burden shifts back to plaintiff to show that the reason is pretext or to show that although UPS's stated reason is legitimate, her pursuit of workers' compensation benefits was a substantial factor motivating the discharge. Plaintiff has failed to produce evidence of pretext with respect to her claim that she was wrongfully terminated for filing workers' compensation claims. Plaintiff has not produced any evidence that her workers' compensation claim was a substantial factor in motivating her discharge either.

Accordingly, plaintiff's claim for wrongful discharge in violation of public policy fails.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS in part and DENIES in part defendant's motion for summary judgment. Defendant's motion is GRANTED with respect to plaintiff's claims for race discrimination, race-based hostile work environment, and wrongful discharge in violation of public policy, and these claims are DISMISSED. Defendant's motion is DENIED with respect to plaintiff's claim for gender discrimination, gender-based hostile work environment, and discrimination based on opposition to unlawful practice. The court also DENIES plaintiff's motion to supplement the record (Dkt. # 57) for the reasons previously stated. *Supra*, n. 2.

During oral argument, counsel for both parties indicated that the week of July 9 would be suitable for trial. The Clerk of Court is ORDERED to issue an amended

pre-trial schedule with a trial date of July 9, 2012. Due to the limited time remaining before trial, there will be a truncated schedule for pre-trial deadlines.